

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00070-CR

JEFFREY EARL MYRICK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR12130

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

## OPINION

Convicted by a jury of possession of less than one gram of a controlled substance (methamphetamine), Jeffrey Earl Myrick was sentenced to twenty-one months' confinement in state jail and was ordered to pay a $5,000.00 fine. Myrick's sole issue on appeal[1] is that the trial court erred in overruling his motion to suppress the evidence that was discovered during a "building check" of the property by deputy sheriffs. We affirm the trial court's judgment.

## I. Standard of Review

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review.[2] *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review its application of the law and determination on questions not turning on credibility de novo. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions" if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89.

---

[1]Originally appealed to the Second Court of Appeals in Fort Worth, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]No findings of fact and conclusions of law were requested and none were entered.

We will sustain the admission of the evidence if admission is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

## II.     Factual Background

According to the testimony of Hood County Deputy Sheriffs Joshua Lane and Thomas Johnson, the Fall Creek Convenience Store (the Store) had been burglarized in 2011, prompting the Hood County Sheriff's Department to regularly conduct routine building checks "[t]o make sure [the Store is] secure and no one has committed a crime" as a part of their "community caretaking function."  Johnson explained that during such a building check, he would customarily "approach the doors, check the doors, make sure they're locked, look inside, make sure everything looks as though it's supposed to, nothing is out of order, nothing is damaged, no glass is damaged, check the perimeter of the building, [and] check on all the doors and windows."

During nineteen of their previous twenty building checks at the Store during 2011, deputies always made sure that the back "gate ha[d] been locked and secured."  The twentieth of these building checks was different because at around 3:00 a.m. on November 7, 2011, Johnson and fellow deputy sheriff Ashley Rasberry noticed that the gate was open.  This departure from the regular circumstance raised their suspicions "that [they] might possibly have a burglary in progress or a burglary that had previously happened."  Johnson and Rasberry began to investigate and called Lane for backup.

3

As they walked around the building, Johnson and Rasberry heard "two distinct different voices, singing and talking." Following the sound of the voices, the deputies discovered their sources to be Myrick and his brother, who were sitting inside a truck that had been backed into an open garage on the premises.[3] Rasberry immediately observed that Myrick "looked like he was smoking from a pipe." Johnson "walked over . . . [and] observed [Myrick] putting this glass cylindrical tube into a brown wooden box." Johnson also noticed a "baggie, containing a crystalline substance" in plain view. Myrick and his brother were both arrested for possession of methamphetamine.[4]

## III. Analysis

The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution both prohibit "unreasonable searches and seizures." U.S. CONST. amend. IV; TEX. CONST. art I, § 9. Here, it was undisputed that the search and seizure leading to the discovery of the methamphetamine occurred without the prior issuance of any warrant. Due to the absence of a search warrant, the burden shifts to the State to prove that the search leading to the seizure was reasonable under the totality of the circumstances existing at the time. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

As part of an officer's duty to "'serve and protect,'" an officer "'may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help.'" *Travis v. State*, 322 S.W.3d 747, 750–51 (Tex. App.—Texarkana 2010, no pet.)

---

[3]Johnson testified, "They were inside of the shop."

[4]The Store is unique because there are rental properties located within the land enclosed by the fence and gate. Myrick and his brother actually rented a space behind the convenience store.

(quoting *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002)).  In certain circumstances, a police officer may reasonably seize an individual through the exercise of the community caretaking function even without reasonable suspicion or probable cause that an offense has been committed.  *Id*. at 751; *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002); *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999)); *see Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).

Myrick believes that the State invoked the community caretaking exception to the warrant requirement and challenges its applicability to this case.  This exception to the warrant requirement cannot be used if the officer is primarily motivated by a different purpose, such as law enforcement.  *Corbin*, 85 S.W.3d at 277.  It has "'narrow applicability.'"  *Laney*, 117 S.W.3d at 859 (quoting *Wright v. State*, 7 S.W.3d 148, 152 (Tex. Crim. App. 1999)).  Here, the circumstances leading to the discovery of the methamphetamine-smoking brothers was not precipitated by the deputies' exercise of community caretaking functions.  Rather, the deputies' actions were motivated by the exercise of their duty to prevent a burglary of the building.  Because they were not assisting anyone in need of help at the time they saw the illicit drugs, the community caretaking exception does not apply.

This search falls within another exception to the requirement to obtain a search warrant: the plain view doctrine.  "The plain view doctrine requires that '(1) law enforcement officials have a right to be where they are, and (2) it be immediately apparent that the item seized constitutes evidence.'"  *Johnson v. State*, 161 S.W.3d 176, 182 (Tex. App.—Texarkana 2005), *aff'd by Johnson v. State*, 226 S.W.3d 439 (Tex. Crim. App. 2007) (quoting *Walter v. State*, 28

5

S.W.3d 538, 541 (Tex. Crim. App. 2000)). Further, Article 14.01 of the Texas Code of Criminal Procedure authorizes a peace officer to arrest a person without a warrant when an offense is "committed in his presence or within his view." TEX. CODE CRIM. PROC. ANN. art. 14.01 (West 2005).

The second prong of this test is not challenged. Instead, Myrick questions whether Johnson and Rasberry had a right to be on the Store's property. "In determining whether the officer had a right to be where he was, the Supreme Court requires that 'the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed.'" *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000) (quoting *Horton v. California*, 496 U.S. 128, 136 (1990)).

Myrick took no steps to establish that he was on the premises with a right to expect privacy there. He failed to establish his standing to challenge whether the deputies had a right to be where they were. As explained in *Villareal v. State*,

> An accused has standing, under both constitutional provisions, to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Richardson v. State*, 865 S.W.2d at 948–949; *Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992). Furthermore, the accused, because he has greater access to the relevant evidence, has the burden of proving facts establishing a legitimate expectation of privacy. *Calloway v. State*, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988). To carry this burden, the accused must normally prove: (a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Richardson v. State*, 865 S.W.2d at 948–949. The following, at least, are relevant to the court's determination of whether the accused's subjective expectation was one that society was prepared to recognize as objectively reasonable: (1) whether

6

> the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Calloway v. State*, 743 S.W.2d at 651.

*Villarreal v. State*, 935 S.W.3d 134, 138 (Tex. Crim. App. 1996) (footnote omitted). No one factor is dispositive; rather, we determine standing based on the totality of the circumstances surrounding the challenged search and seizure. *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002); *Villarreal*, 935 S.W.2d at 139.

First, considering the facts that the gate and garage door had been left open or unlocked, there was no evidence that Myrick had an actual subjective expectation of privacy in this commercial space. Next, it would have been Myrick's duty to show that if he had an expectation of privacy, his "subjective expectation was one that society was prepared to recognize as objectively reasonable." *Villareal*, 935 S.W.3d at 138; *see Granados*, 85 S.W.3d 223. The evidence demonstrated that Myrick rented a space on the property (thereby establishing his right to be on the premises). However, from the photographs introduced into evidence, it appears that the spaces were rented for storage or commercial purposes. The truck was located in an open garage attached to the convenience store, and the record does not indicate whether Myrick's rental agreement allowed him the use of this garage. The record is also unclear whether Myrick had the right to be on the property of the Store outside of normal business hours. In addition, the fact that Myrick showed that he had rented a space on the premises did not establish any kind of

7

exclusive right which would have barred the deputies' entry on the premises—particularly in view of the circumstances here.

It is clear, however, that Myrick did not have complete dominion or control over the property and did not have the right to exclude others from the garage area in which the truck was parked. Because the gate was open, music was playing at a sufficient volume for the deputies to hear it, Myrick and his brother were drawing attention to their location by singing, the truck windows allowed the deputies to see inside, and the garage door was left open, Myrick did not take precautions customarily taken by those seeking privacy.[5] Further, there was no evidence that Myrick put the place to private use (there was no testimony that personal items were kept at the property), and nothing suggests a claim of privacy in this context is consistent with historical notions of privacy. *See Beck v. State*, 583 S.W.2d 339, 345 (Tex. Crim. App. [Panel Op.] 1979) (holding defendant, who was employee of and had key to his father's business—premises searched—lacked standing to challenge search of building his father owned).

We hold that Myrick did not meet his burden to show that he had standing to challenge the search.[6]

---

[5]A person does not have a reasonable expectation of privacy in something he voluntarily exposes to the public. *Martinez v. State*, 880 S.W.2d 72, 76 (Tex. App.—Texarkana 1994, no pet.). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Id.* (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)).

[6]*See Wade v. State*, No. 02-02-241-CR, 2004 WL 1416111, at *4 (Tex. App.—Fort Worth, Jun. 24, 2004, pet. ref'd) (mem. op., not designated for publication) (citing *United States v. Silva*, 247 F.3d 1051, 1056 (9th Cir. 2000) (holding, based on totality of circumstances, defendants had no standing to challenge search of shed in which methamphetamine was being produced, even though defendants claimed to have stayed in shed during previous night and possessed key to shed); *United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir. 1984) ("More evidence than possession of a key was necessary to satisfy appellant's burden of establishing a legitimate expectation of privacy in the premises.")). Although this unpublished case has no precedential value, we may take

## IV.     Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     September 11, 2013
Date Decided:       September 12, 2013

Publish

---

guidance from the Fort Worth opinion "as an aid in developing reasoning that may be employed" in this Fort Worth transfer case.  *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).