**Affirmed and Opinion filed August 16, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00220-CR

---

**VINCENT LAMON WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1420283**

---

## O P I N I O N

Appellant Vincent Lamon Williams challenges the trial court's denial of his motion to suppress evidence seized from a house he claimed to have been occupying under an oral lease. Appellant argues that the police officer's actions in removing him from the residence, and searching the residence, violated his rights guaranteed by the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. We affirm the trial court's denial of appellant's motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

While incarcerated, Eugene Johnson, Jr. sent a letter to his sister's children. In the letter, Eugene described his concerns that unauthorized persons were living in the home he and his sister owned. Eugene stated that he believed the occupants of the house were engaged in illegal activities, specifically selling drugs. Eugene believed the unauthorized persons had changed the locks and were preventing entry to the individual Eugene asked to watch the home while he was incarcerated. Eugene wrote that two individuals "Roland" and "Vincent" were in the house and he did not know how they got into it. Eugene asked his sister to "[p]lease make everyone get out."

Upon receipt of the letter, Eugene's sister, Geraldine Johnson, went to a police storefront and asked for help. Officer Cody Robinson responded. He and Geraldine went to the home. Geraldine showed the officer a copy of Eugene's letter and their father's will, under which their father had left the property to Geraldine and Eugene in equal shares. The officer looked up the property on the Harris County Appraisal District website and the website showed the Johnson Trust as the property owner.

The officer then knocked on the door of the home to investigate. Appellant answered. As soon as appellant opened the door, the officer smelled a strong scent of marijuana. As the officer began to handcuff appellant, appellant mentioned that his girlfriend was in the home. The officer called the girlfriend's name, but she did not respond. The officer asked Geraldine for consent to enter the property, and Geraldine consented.

Upon entering, the officer found a woman asleep on a bed. On the dresser in the room where the woman was sleeping, he saw in plain view a pistol and a substance that appeared to be cocaine.

The officer arrested appellant. Charged with possession of a controlled substance, namely cocaine, weighing more than one gram and less than four grams, appellant pleaded, "not guilty." Before trial by jury, appellant moved to suppress evidence from the search, claiming it was illegal because the officer did not have a warrant, consent, or exigent circumstances. In the hearing on the motion to suppress, appellant argued that he had an informal, oral lease agreement with Eugene that made the property his residence. Appellant argued that the Officer's search violated his rights because the officer did not get a warrant and there was no probable cause to search the property. The trial court denied appellant's motion to suppress.

The jury found appellant guilty of possession of a controlled substance of more than one gram and less than four grams and assessed punishment at twenty-five years' confinement. In this appeal, appellant raises two issues challenging the pretrial suppression ruling.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We afford the same amount of deference to the trial court's application of the law to facts if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id*. We review de novo the trial court's application of the law to facts if resolution of those ultimate questions does not

3

turn on an evaluation of credibility and demeanor. *Id.*

ANALYSIS

In the trial court and on appeal, appellant has argued that his rights were violated under both the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *See* U.S. Const. IV; Tex. Const. art. I, § 9. Appellant correctly points out that, for a violation of the Texas Constitution, the State must prove voluntary consent by clear and convincing evidence; whereas, for a violation of the Fourth Amendment, the State must prove voluntary consent by a preponderance of the evidence. *See State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011); *State v. Ibarra*, 953 S.W.2d 242, 243–45 (Tex. Crim. App. 1997). Except on this point, appellant has not provided any argument or authority that the Texas Constitution provides him greater protection than the United States Constitution with regard to the issues raised in his motion to suppress. Therefore, except on this point, we analyze this issues under Fourth-Amendment jurisprudence. *See Black v. State*, 26 S.W.3d 895, 896 n.4 (Tex. Crim. App. 2000); *Johnson v. State*, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992).

**A. Does appellant have standing to challenge the lawfulness of the search of the house under a reasonable-expectation-of-privacy theory of search?**

What constitutes a "search" for Fourth Amendment purposes — and therefore, what may serve to confer Fourth Amendment "standing"— may be predicated, as the Supreme Court of the United States has emphasized, on either an intrusion-upon-property theory of search or a reasonable-expectation-of-privacy theory of search. *See Florida v. Jardines,* — U.S. —,—, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013); *United States v. Jones,* — U.S. —, —, 132 S.Ct. 945, 949–51, 181 L.Ed.2d 911 (2012); *State v. Huse*, —S.W.3d.—,—, 2016 WL

4

1449627, at *5 (Tex. Crim. App. Apr. 13, 2016). Appellant has preserved error as to each of these search concepts.

The State argues for the first time on appeal that appellant lacks standing to challenge the lawfulness of the search of the house. The State may raise this standing issue for the first time on appeal. *See Kothe v. State*, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004); *State v. Klima*, 934 S.W.2d 109, 110–11 (Tex. Crim. App. 1996). We first address whether appellant has standing to challenge the search under a reasonable-expectation-of-privacy theory and then we address this issue as to the intrusion-upon-property theory.

Under a reasonable-expectation-of-privacy theory, a person has "standing" to contend that a search or seizure was unreasonable if (1) the person has a subjective expectation of privacy in the place or object searched, and (2) society is prepared to recognize that expectation as "reasonable" or "legitimate." *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014). The "standing" doctrine ensures that an accused may claim only that the accused's own rights have been violated; the accused cannot assert that he is entitled to benefit because the rights of another have been violated. *Id*. A person's constitutional right to be free from unreasonable searches is a personal right that cannot be asserted vicariously. *Id*.

An accused normally has standing to challenge the search of places and objects that the accused owns. *Id*. at 406. For example, a homeowner has standing to challenge the search of a home that he owns. *Id*. at 406. A "legitimate" expectation of privacy acknowledges the lawfulness of the person's "subjective" expectation of privacy. *Id*. at 406. (stating that one who owns or lawfully possesses or controls property in all likelihood will have a legitimate expectation of privacy and indicating that those who do not own or lawfully possess or control property likely will not have a legitimate expectation of privacy). The factors that courts use in deciding whether a person has a reasonable expectation of privacy in

5

the place or object searched include the following:

(1) whether the person had a proprietary or possessory interest in the place or object searched;

(2) whether the person's presence in or on the place searched was legitimate;

(3) whether the person had a right to exclude others from the place or object;

(4) whether the person took normal precautions, before the search, which are customarily taken to protect privacy in the place or object;

(5) whether the place or object searched was put to a private use;

(6) whether the person's claim of privacy is consistent with historical notion of privacy.

*Id*. at 407–08. Under a reasonable-expectation-of-privacy theory, ownership or legal possession of the property searched is not the "be-all-end-all" in deciding whether a person has a legitimate expectation of privacy in the property. *Id*. at 408. We review the legal issue of standing de novo although we defer to the trial court's factual findings and view them in the light most favorable to the trial court's ruling. *Kothe*, 152 S.W.3d at 59.

The record contains (1) evidence that the Harris County Appraisal District listed the house as belonging to the Johnson Trust, (2) a will from Eugene and Geraldine's father leaving property to them, (3) and a letter written by Eugene stating that no individuals should be on the premises. In particular, Eugene wrote in the letter that he didn't know how "Vincent" and "Roland" came to be living there and that they had changed the locks to prevent "Teddy," the individual appellant asked to look after the house, from entering. When the officer knocked on the door of the residence, the officer told appellant that he was there to make sure nobody was living in the home who was not supposed to be there. The officer testified that appellant did not mention any lease agreement or provide any evidence that appellant had permission or a right to be at the home.

6

Appellant presented the testimony of his cousin, Roland Gates. Gates testified that he had an informal oral lease agreement with Eugene to rent the home. According to Gates, the oral agreement did not include a specific sum and Gates did not have any documentary proof of the alleged agreement. According to Gates, Gates put money on the books for Eugene to use in prison for a few months and then began paying money to "Teddy." Appellant provided similar testimony about an oral lease. Appellant testified he put money on the books for Eugene for a few months and then began paying "Teddy" and "Teddy's sister." Neither Gates nor appellant produced any receipts, proof of payment, or other evidence to establish the existence of a lease for the premises or other authority to occupy the premises.

Although Gates and appellant testified that they had an oral rental agreement to lease the property, we presume that the trial court, as fact finder, did not credit this testimony and instead credited evidence showing appellant had no authority to occupy the premises. *See Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Gates and appellant had no documentary proof of any rental agreement or possessory interest in the property. The record contained testimony from the officer that Harris County Appraisal District records showed the Johnson Trust owned the property. Appellant argues that there was no evidence that Eugene and Geraldine owned the property rather than their mother, but if Eugene and Geraldine's mother owned the property, appellant had no evidence of any agreement with her.

The trial court reasonably could have found, based on the testimony presented, that appellant did not have a proprietary or possessory interest in the house and that the first factor weighed against appellant having standing. *See Padilla v. State*, 462 S.W.3d 117, 123 (Tex. App.—Houston [1st Dist.] 2015, pet.

ref'd) (noting that passenger had no possessory interest in vehicle). With respect to the second and third factors, based on Eugene's letter and Officer Robinson's testimony, the trial court reasonably could have found that appellant was not in the residence legitimately and that he did not have the right to exclude others from the house. *See Ex parte Moore*, 395 S.W.3d 152, 161 (Tex. Crim. App. 2013) (holding that temporary guest of registered motel guest did not have reasonable expectation of privacy); *Padilla*, 462 S.W.3d at 123. Although the fourth and fifth factors weigh in appellant's favor because appellant took some actions to seek privacy and used the residence for private purposes, the trial court reasonably could have found that appellant was trespassing on the Johnson property, and this conduct is inconsistent with historical notions of privacy under the sixth factor. *See Davis v. State*, 119 S.W.3d 359, 368 (Tex. App.—Waco 2003, pet. ref'd) (noting that trespassers do not have reasonable expectation of privacy). Based on the totality of the circumstances, the evidence supports the trial court's implied finding that appellant did not have a reasonable expectation of privacy in the home that was searched. *See Matthews*, 431 S.W.3d at 606–07; *Ex parte Moore*, 395 S.W.3d at 161; *Davis v. State*, 119 S.W.3d at 368.

Because appellant did not have a reasonable expectation of privacy in the house, appellant lacks standing to challenge the officer's search under a reasonable-expectation-of-privacy theory. *See Matthews*, 431 S.W.3d at 606–07; *Ex parte Moore*, 395 S.W.3d at 161; *Davis v. State*, 119 S.W.3d at 368.

**B. Does appellant have standing to challenge the lawfulness of the search of the house under an intrusion-upon-property theory of search?**

The parties have not cited and research has not revealed any case addressing the legal standard to be applied in determining whether a person has "standing" to contend that a search or seizure was unreasonable under the Fourth Amendment to the United States Constitution under an intrusion-upon-property theory of search.

8

The Court of Criminal Appeals has not yet addressed this issue. *See Jones,* — U.S. at —, 132 S.Ct. at 949 n.2 (noting that the vehicle in question was registered to Jones's wife rather than to Jones but stating that Jones was the exclusive driver and that the issue of Jones's ability to challenge the search was not before the high court); *Huse*, 2016 WL 1449627, at *5 (acknowledging that there are two theories of search, but analyzing standing only under the reasonable-expectation-of-privacy theory because the defendant had not raised the intrusion-upon-property theory of search).

If appellant's standing to challenge the search of the home under an intrusion-upon-property theory of search is analyzed under the same legal standard as that applicable to the reasonable-expectation-of-privacy theory, appellant lacks standing to challenge the officer's search under the analysis in the previous section. *See Matthews*, 431 S.W.3d at 606–07; *Ex parte Moore*, 395 S.W.3d at 161; *Davis v. State*, 119 S.W.3d at 368. If appellant's standing to challenge the search of the home under an intrusion-upon-property theory of search is analyzed under a different standard, we conclude that the standard would be whether the person had a sufficient proprietary or possessory interest in the place or object searched. *See Jones,* — U.S. at —, 132 S.Ct. at 949–51 & n.2. As discussed in the previous section, the trial court reasonably could have found that appellant did not have a proprietary or possessory interest in the house. *See Padilla*, 462 S.W.3d at 123. Under either analysis, appellant lacks standing to challenge Officer Robinson's search. *See Jones,* — U.S. at —, 132 S.Ct. at 949–51 & n.2; *Matthews*, 431 S.W.3d at 606–07; *Ex parte Moore*, 395 S.W.3d at 161; *Davis v. State*, 119 S.W.3d at 368.

Having concluded that appellant lacks standing to challenge the search of the home under either a reasonable-expectation-of-privacy theory or an intrusion-

upon-property theory, we overrule appellant's second issue.[1]

**C. Did the police seize evidence as a result of the allegedly illegal arrest?**

In his first issue, appellant asserts that his seizure from the property amounted to an illegal arrest within the home, unsupported by probable cause. Appellant argues that the trial court abused its discretion in denying his motion to suppress evidence because of this allegedly unlawful arrest. For purposes of analysis, we presume, without deciding, that removing appellant from the house constituted an illegal arrest.

But, neither the Fourth Amendment exclusionary rule nor the statutory exclusionary rule embodied in article 38.23(a) of the Code of Criminal Procedure requires the suppression of evidence that was not "obtained" as a result of some illegality. *See* Tex. Code Crim. Proc. Ann art. 38.23 (West, Westlaw through 2015 R.S.); *State v. Jackson*, 464 S.W.3d 724, 731 (Tex. Crim. App. 2015). Moreover, not every but-for product of police illegality will constitute evidence "obtained" from that illegality for either federal or state exclusionary-rule purposes; evidence is not subject to suppression simply because it would not have come to light but for the illegal actions of the police. *Jackson*, 464 S.W.3d at 731. Instead, "'the more apt question is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id*. (quoting *State v. Mazuca*, 375 S.W.3d 294, 300 (Tex. Crim. App. 2012). Today's case does not involve a confession, so in making this determination, we consider the following factors: (1) the temporal proximity of the arrest and seizure of evidence, (2) the presence of intervening circumstances, and

---

[1] We need not and do not address the State's argument that Geraldine had actual or apparent authority to consent to the search of the house and that she voluntarily consented to the search.

(3) the purposefulness or flagrancy of the official misconduct. *Id.* If there are no intervening circumstances, the temporal proximity is the paramount factor. *Id.* at 732. But, if there is an intervening circumstance, the importance of temporal proximity decreases, and the purposefulness or flagrancy of the official misconduct becomes of vital importance. *Id.*

In today's case, the officer seized evidence shortly after the allegedly illegal arrest. But, the search of the house was based on Geraldine's consent, which was given after the alleged arrest; the search was not based on appellant's arrest. We conclude that Geraldine's consent was an intervening circumstance, and that therefore the third factor is of vital importance. *Id.*

The trial court reasonably could have found that the officer removed appellant from a house that appellant did not own, reasonably believing that the house belonged to the Johnson family and that appellant had no authority to be there. Shortly after the officer removed appellant, Geraldine gave her consent to have the officer search the house. As discussed above, appellant lacks standing to challenge the search of the home, and that search did not violate appellant's Fourth Amendment rights. *See Matthews*, 431 S.W.3d at 606–07; *Ex parte Moore*, 395 S.W.3d at 161; *Davis v. State*, 119 S.W.3d at 368. The seizure of the evidence occurred as a result of Geraldine's consent and the search of the house rather than as a result of appellant's allegedly illegal arrest. *See id.* at 731–34. Presuming that the officer arrested appellant and that the arrest was illegal, we conclude that any purposefulness or flagrancy of the officer's conduct was not significant. *See id.* Thus, even under these presumptions, the trial court did not abuse its discretion in denying appellant's motion to suppress because the seizure of the evidence did not occur by the exploitation of the allegedly illegal arrest. *See id.*; *Padilla v. State*, 462 S.W.3d 117, 125 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). We overrule appellant's first issue.

11

## CONCLUSION

Appellant lacks standing to challenge the search of the house under either a reasonable-expectation-of-privacy theory or an intrusion-upon-property theory of search. Even presuming the officer arrested appellant illegally, the seizure of the evidence did not occur by the exploitation of the allegedly illegal arrest. The trial court did not abuse its discretion in denying appellant's motion to suppress.

We affirm the trial court's judgment.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise.
Publish — TEX. R. APP. P. 47.2(b).