**Affirmed and Memorandum Opinion filed October 26, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00296-CR

## ARMANDO CASTILLO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 176th District Court
### Harris County, Texas
### Trial Court Cause No. 1448751

## M E M O R A N D U M   O P I N I O N

Armando Castillo appeals his conviction for possession of marijuana in an amount of more than 50 pounds and less than 2,000 pounds. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(5) (Vernon 2017). He contends that the trial court erroneously denied his motion to suppress because "the police officers' warrantless entry into Appellant's residence was based upon an invalid 'knock and talk' investigation which resulted in an illegal 'protective sweep' by the police

during which marijuana was discovered." We conclude that the trial court did not err in denying appellant's motion to suppress because appellant lacked standing to challenge the lawfulness of the entry and search of the warehouse; and we affirm the trial court's judgment.

## BACKGROUND

Appellant was charged with possession of marijuana. He filed a motion to suppress, and the trial court held a hearing on the motion on March 30, 2016. At the hearing, Texas Department of Public Safety Special Agent Glen Welters testified that he was tasked in September 2014 with locating and arresting Joseph Castillo[1] pursuant to an arrest warrant for the offense of aggravated assault. Agent Welters started his search for Joseph by investigating and observing Joseph's last known address at 30 Dipping Lane in Harris County.

Agent Welters tried to execute the arrest warrant for Joseph in early November 2014 at the Dipping Lane address but Joseph was not at the residence. Agent Welters interviewed Joseph's mother and other family members at the residence but no one could tell him where Joseph resided. Later, he interviewed two individuals who told him that Joseph was "staying or being helped by an individual by the name of Napoleon, staying or being given a location to stay at that time, a warehouse; and in the warehouse there is a boxing ring." The address of the warehouse, which consisted of two joined suites, was 13940 Bammel North Houston Road in Houston. Agent Welters called the property leasing company and verified that the leaseholder for the warehouse — suites 217 and 218 — was Napoleon Gonzalez.

Agent Welters started conducting surveillance of the warehouse. On

---

[1] Appellant and Joseph Castillo have the same surname. Therefore, we will refer to Joseph Castillo using only his first name.

November 14, 2014, he saw for the first time a man he believed to be Joseph at the warehouse. He got a clear but brief look of the man when the man opened the warehouse garage door to let a visitor enter and then exit the warehouse. Agent Welters also observed a gray BMW sport utility vehicle parked in front of the warehouse, which he found significant because Joseph's mother had told him Joseph was driving a gray BMW sport utility vehicle. Agent Welters did not execute the arrest warrant for Joseph at the time because he wanted to conduct more surveillance and ensure the man he saw open and close the warehouse garage door was in fact Joseph.

On November 17, 2014, Agent Welters together with other police officers continued surveillance of the warehouse. A gray BMW sport utility vehicle was again parked in front of the warehouse. While watching the warehouse, the officers observed a male drive up to the warehouse, exit his vehicle, knock on the garage door to Suite 218, and wait. The male was later identified as Napoleon Gonzalez Ruiz — the son of the warehouse leaseholder Napoleon Gonzalez. A few moments after Ruiz knocked on the door, Agent Welters again saw the man, whom he saw a few days earlier and believed to be Joseph, open the garage door to let Ruiz enter the warehouse and then close the garage door. A few moments later, Ruiz departed the warehouse through the garage door.

Agent Welters instructed police officers to follow Ruiz. When Ruiz stopped at a gas station, officers approached Ruiz to "inquire as to whether or not Joseph Castillo was at" the warehouse. Although Ruiz was "hesitant to discuss who was at the facility" and never told police that Joseph was at the warehouse, Ruiz agreed to cooperate and returned with the officers to the warehouse.

When Ruiz and the officers arrived at the warehouse, Agent Welters told Ruiz that police were "looking for Joseph Castillo, we needed to know if he was in there

3

and I needed him to knock on the door, do his special knock he did before and have someone come to the door so we can take Joseph in custody." As requested, Ruiz knocked on the garage door but no one answered. Agent Welters asked Ruiz to knock on the glass window next to the garage door but no one answered. Agent Welters then asked Ruiz to call someone inside the warehouse and Ruiz complied. Agent Welters then spoke "with the person on the other end of that line" and instructed the person to "open the door, advised that I was law enforcement and I needed him to open the door."

A short time later, the man Agent Welters believed to be Joseph opened the garage door. The man was "ordered to lay face down on the ground" and was held by one of the police officers while Agent Welters and the other officers entered the warehouse, "began to conduct a protective sweep," and "called out for anyone else that was in the building to exit with their hands up." Appellant and a woman named Sandra Contreras exited the warehouse as the police conducted a protective sweep.

During the sweep, a police officer informed Agent Welters that the man he had believed to be Joseph was in fact "not our guy" but was identified as Justin Sutton. Agent Welters testified that, when he was told the man was not Joseph, he continued the sweep in an effort to locate Joseph in the warehouse. While looking for Joseph, Agent Welters saw "[a]t least two or three handguns in plain view in the front office area where we attempted to knock on the glass as well as a large sum of cash in plain view as well as a [white] powdery substance." Moving slowly through the warehouse, police observed a boxing ring and then a bedroom in the back of the building. Police observed "another handgun in plain view on the floor next to the bed. Continue to clear, and there is another garage portion back there which is where multiple bundles of marijuana were observed."

Agent Welters testified that police did not find Joseph in the warehouse and

4

police were unable to execute the warrant for Joseph's arrest. He testified that he called his supervisor to obtain a search warrant based on what he had observed at the warehouse during the protective sweep. Once a search warrant was issued, police reentered the warehouse, executed the search warrant, and seized weapons and contraband, including 1,070 pounds of marijuana.

After the trial court considered the testimony and evidence presented at the hearing, it signed an order denying appellant's motion to suppress on March 30, 2016. Appellant pleaded guilty to the offense as charged. The trial court sentenced him to six years' confinement. Appellant filed a timely appeal on March 31, 2016.

## STANDARD OF REVIEW

We review a trial judge's ruling on a motion to suppress under a bifurcated standard of review. *Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016). First, we afford almost total deference to a trial judge's determination of historical facts. *Id*. The judge is the sole trier of fact and judge of witnesses' credibility and the weight to be given their testimony. *Id*. The judge is entitled to believe or disbelieve all or part of a witness's testimony — even if that testimony is uncontroverted — because the judge can observe the witness's demeanor and appearance. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

When, as here, there are no explicit findings of historical fact, we review the evidence in the light most favorable to the trial judge's ruling assuming that the trial judge made implicit findings of fact supported in the record that buttress the ruling. *Donjuan v. State*, 461 S.W.3d 611, 615 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

5

Second, we review a judge's application of the law to the facts *de novo*. *Weems*, 493 S.W.3d at 577. We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case, even if the trial judge did not rely on that theory. *State v. Esparza*, 413 S.W.3d 81, 85 (Tex. Crim. App. 2013).

## ANALYSIS

Appellant argues in his sole issue on appeal that the trial court erroneously denied his motion to suppress evidence because "the police officers' warrantless entry into Appellant's residence was based upon an invalid 'knock and talk' investigation which resulted in an illegal 'protective sweep' by the police during which marijuana was discovered." Appellant contends that, "[s]ince the officers' warrantless entry was thus illegal, the officers had no legal right to be where they were, and the subsequent 'protective sweep' conducted by the officers was likewise improper and constituted an illegal search, regardless of whether or not the contraband was in plain view."

Because standing is an element of a claim of unlawful search and seizure, an appellate court may raise the issue of standing on its own and may analyze that issue as part of the claim presented. *See Kothe v. State*, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004); *State v. Millard Mall Servs., Inc.*, 352 S.W.3d 251, 253 (Tex. App.— Houston [14th Dist.] 2011, no pet.). Accordingly, we first consider whether appellant had standing to challenge the lawfulness of the entry and protective sweep of the warehouse.[2]

---

[2] Appellant has argued in the trial court and on appeal that his rights were violated under the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. Because appellant has not provided any argument or authority that the Texas Constitution provides him greater protection than the United States Constitution with regard to the issues raised by the motion to suppress, we analyze this case under Fourth Amendment jurisprudence.

6

## I.    Standing

"Under the Fourth Amendment, '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]'" *State v. Huse*, 491 S.W.3d 833, 839 (Tex. Crim. App. 2016) (quoting U.S. Const. amend. IV). "When 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a search' within the original meaning of the Fourth Amendment' has 'undoubtedly occurred'" *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)). To assert a challenge to a search and seizure, a defendant must first establish standing. *See Kothe*, 152 S.W.3d at 59; *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

Standing in this context is an individual's right to complain about an allegedly illegal government intrusion under the Fourth Amendment. *Pham v. State*, 324 S.W.3d 869, 874 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see Villarreal*, 935 S.W.2d at 138. Fourth Amendment rights are personal rights which may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978); *Huse*, 491 S.W.3d at 839; *see also Kothe*, 152 S.W.3d at 59. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. "And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Id*. (citations omitted).

Standing is a question of law which we review *de novo*. *Kothe*, 152 S.W.3d

---

*See Williams v. State*, 502 S.W.3d 254, 258 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

at 59.  It is the defendant's burden to provide facts that establish standing because he has greater access to the relevant evidence.  *See Villarreal*, 935 S.W.2d at 138.  Failure to meet that burden and to establish standing may result in the denial of the motion to suppress.  *State v. Klima*, 934 S.W.2d 109, 110 (Tex. Crim. App. 1996).  That decision will not be disturbed on appeal even in cases in which the record does not reflect that the issue was ever considered by the parties or the trial court.  *Id*.

What constitutes a search under the Fourth Amendment, and thus what may serve to confer Fourth Amendment standing, may be predicated on either an intrusion-upon-property theory of search or a reasonable-expectation-of-privacy theory of search.  *Huse*, 491 S.W.3d at 839; *Williams v. State*, 502 S.W.3d 254, 258 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see Jardines*, 569 U.S. at 11; *Ford v. State*, 477 S.W.3d 321, 328 (Tex. Crim. App. 2015).  In determining whether appellant has established standing in this case, we consider both theories.  *See State v. Bell*, 366 S.W.3d 712, 713 (Tex. Crim. App. 2012) (citing *Jones*, 565 U.S. at 404-05).

We begin by considering whether appellant had standing to challenge the search of the warehouse under a reasonable-expectation-of-privacy theory.  Under this theory, we consider whether (1) appellant, "by his conduct, has exhibited an actual (subjective) expectation of privacy," *i.e.*, appellant has sought to "preserve something as private;" and (2) appellant's expectation of privacy is recognized by society as reasonable or legitimate under the circumstances.  *See Long v. State*, No. PD-0984-15, 2017 WL 2799973, at *13 (Tex. Crim. App. June 28, 2017) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)); *Love v. State*, No. AP–77,024, 2016 WL 7131259, at *3 (Tex. Crim. App. Dec. 7, 2016).

"A defendant normally has 'standing' to challenge the search of places and objects that he owns."  *State v. Granville*, 423 S.W.3d 399, 406 (Tex. Crim. App.

2014); *Williams*, 502 S.W.3d at 259. "For example, a homeowner has standing to challenge a search of his home." *Granville*, 423 S.W.3d at 406; *Williams*, 502 S.W.3d at 259. A legitimate or reasonable expectation of privacy acknowledges the lawfulness of the person's subjective expectation of privacy. *Granville*, 423 S.W.3d at 406; *Williams*, 502 S.W.3d at 259. The factors that courts consider in deciding whether a defendant has a reasonable expectation of privacy in the place or object searched include whether (1) he had a proprietary or possessory interest in the place or object searched; (2) his presence in or on the place searched was legitimate; (3) he had a right to exclude others from the place or object; (4) he took normal precautions, prior to the search, which are customarily taken to protect privacy in the place or object; (5) the place or object searched was put to a private use; and (6) his claim of privacy is consistent with historical notion of privacy. *Long*, 2017 WL 2799973, at *13; *Granville*, 423 S.W.3d at 406.

There is scant evidence in the record pertinent to the standing issue. The evidence establishes that police entered the warehouse and conducted a protective sweep to look for Joseph and execute an arrest warrant for him. Agent Welters testified that the warehouse leaseholder was Napoleon Gonzalez. The evidence does not show that appellant had any ownership or possessory interest in the warehouse. Nor does the evidence show appellant was legitimately in the warehouse; that he had control over the warehouse and a right to exclude others from the warehouse; or that he "took normal precautions, prior to the search, which are customarily taken to protect privacy."

Agent Welters testified that there was an office or bedroom close to the entrance of the warehouse. In the middle of the warehouse was a boxing ring. And in the back, partitioned off by a "temporarily constructed wall," was a bedroom. There is no evidence that appellant used the bedroom as his residence. Instead,

9

Agent Welters testified that he was informed by two different people that Joseph was "being helped by a gentleman by the name of Napoleon, living or staying in a warehouse that has a boxing ring inside of it." This was the reason why police, after conducting surveillance, went to the warehouse to execute an arrest warrant for Joseph.

Appellant did not call any witnesses during the suppression hearing nor did he testify that he had any possessory interest in the property or permission to be in the warehouse. He presented no evidence regarding what connection, if any, he had to the warehouse. Without such evidence, appellant failed to satisfy his burden of establishing that he had a reasonable expectation of privacy in the warehouse. Appellant therefore lacked standing to contest the search under a reasonable-expectation-of-privacy theory. *See Garza v. State*, 705 S.W.2d 818, 820 (Tex. App.—San Antonio 1986, no pet.) (concluding that defendant failed to establish that he had standing when appellant did not testify during suppression hearing and there was no evidence that he had an ownership or possessory interest in the property searched); *Middleton v. State*, No. 14–12–00481–CR, 2013 WL 2247393, at *3 (Tex. App.—Houston [14th Dist.] May 21, 2013, pet. ref'd) (mem. op., not designated for publication) (same).

We next consider whether appellant had standing to challenge the search of the warehouse under an intrusion-upon-property theory of search. This court has acknowledged that the Court of Criminal Appeals has not yet addressed what legal standard should be applied in determining whether a defendant has standing to contest that a search was unreasonable under an intrusion-upon-property theory. *Williams*, 502 S.W.3d at 260. Therefore, this court analyzed standing using the same standard that is applicable to the reasonable-expectation-of-privacy theory; and it also analyzed standing using a narrower standard considering "whether [a defendant]

had a sufficient proprietary or possessory interest in the place or object searched." *Id*. at 261.

Following our precedent in *Williams*, we conclude that, if appellant's standing to challenge the search of the warehouse under an intrusion-upon-property theory of search is analyzed under the same legal standard as is applicable to the reasonable-expectation-of-privacy theory, appellant lacked standing to challenge the warehouse search under the above analysis. *See id*. If appellant's standing to challenge the search under an intrusion-upon-property theory of search is analyzed considering only whether appellant had a sufficient proprietary or possessory interest in the place searched, we conclude that appellant did not have standing because there is no evidence that he had any proprietary or possessory interest in the warehouse. *See id*. Under either analysis, appellant lacked standing to challenge the search.

Accordingly, we hold that appellant failed to establish standing to challenge the search of the warehouse under a reasonable-expectation-of-privacy theory and an intrusion-upon-property theory. Therefore, the trial court did not err in denying appellant's motion to suppress, and we need not address appellant's complaint as presented. We overrule appellant's sole issue.

## CONCLUSION

We affirm the judgment of the trial court.


/s/     William J. Boyce
        Justice


Panel consists of Justices Boyce, Jamison and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).

11