**Majority, Concurring, and Dissenting Panel Opinions of August 10, 2017 Withdrawn; Reversed and Remanded and En Banc Majority and Dissenting Opinions filed August 31, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-01005-CR
### NO. 14-15-01006-CR

---

## NATHAN RAY FOREMAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1374837 and 1374838**

---

## D I S S E N T I N G   O P I N I O N

Appellant raises a single issue on appeal – the denial of his motions to suppress video surveillance. The video surveillance was found on the hard drive of a computer that was seized from Dreams Auto Customs Shop, the business wherein the two complainants were assaulted and from which they were kidnapped. For the

reasons stated herein, I respectfully dissent to the majority's decision to reverse appellant's conviction.

## STANDING

To challenge a search and seizure under either the United States or Texas Constitutions and article 38.23, a party must first establish standing. *See Kothe v. State,* 152 S.W.3d 54, 59 (Tex. Crim. App. 2004); *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Martinez v. State,* 236 S.W.3d 361, 367 (Tex. App.—Fort Worth 2007, pet. dism'd). Standing is a question of law that we review *de novo* and may be raised by this court *sua sponte. Kothe,* 152 S.W.3d at 59–60; *State v. Millard Mall Servs., Inc.*, 352 S.W.3d 251 (Tex. App.—Houston [14th Dist.] 2011, no pet.).[1] It is the defendant's burden to provide facts that establish standing. *See Villarreal,* 935 S.W.2d at 138; *see also Millard Mall Svcs.*, 352 S.W.3d at 253. Failure to meet that burden and to establish standing may result in the denial of the motion to suppress. *State v. Klima*, 934 S.W.2d 109, 110 (Tex. Crim. App. 1996). That decision will not be disturbed on appeal even in cases in which the record does not reflect that the issue was ever considered by the parties or the trial court. *Id.*

The majority holds the State has forfeited the standing issue "through its assertions, concessions, and acquiescence in the course of litigation" and cites *State v. Klima*, 934 S.W.2d 109, 110 n.1 (Tex. Crim. App. 1996); *Wilson v. State*, 692 S.W.2d 661, 668 (Tex. Crim. App. 1984) (op. on reh'g) (citing *Steagald v. United States*, 101 S.Ct. 1642, 1646 (1981)), in support. In *Wilson*, the Texas Court of Criminal Appeals recognized that *Rakas v. Illinois,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), "put defendants on notice that the privacy interest in the

---

[1] *See also State v. Sepeda*, 349 S.W.3d 713 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *State v. Simon Prop. Group, Inc.*, 357 S.W.3d 687 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (accord).

premises searched is an element of their Fourth Amendment claim, which they bear the burden of establishing" and that *Sullivan v. State,* 564 S.W.2d 698 (Tex. Crim. App. 1978), "put defendants on notice that the State would be allowed to raise the issue of standing for the first time on appeal." 692 S.W.2d at 669. The Court then considered whether the record had the necessary facts to determine whether the defendant had standing. *Id.* The Court found in that case the evidence satisfied the defendant's burden of production. *Id.* at 671. In doing so, the Court answered in the affirmative that a trial court's denial of a motion to suppress can be sustained on the ground that the defendant failed to meet his burden. *Id.* (citing *Lewis v. State,* 664 S.W.2d 345 (Tex. Crim. App.1984)). *Wilson* did not reverse the trial court's denial of the defendant's motion to suppress on the basis that the State conceded or acquiesced to standing. *Id.*

In *Klima*, the Texas Court of Criminal Appeals rejected the lower court's holding that the State was procedurally barred from raising standing for the first time on appeal. 934 S.W.2d at 111. The Court reiterated that the defendant "by bringing the motion to suppress, bore the burden of establishing all of the elements of her Fourth Amendment claim." *Id.* (citing *Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 642 (1980)). "Part of that proof included establishing her own privacy interest in the premises searched." *Id.* (citing *Wilson,* 692 S.W.2d at 666–67; *Rakas v. Illinois,* 439 U.S. at 128, 149–50, 99 S.Ct. 421, 433, 58 L.Ed.2d 387, 404–05 (1978)). The Court held that raising standing for the first time on appeal did not present a new issue and reasoned that from the outset the defendant bears the burden of proving the extent of his Fourth Amendment rights. *Id.* Because standing was an element of the defendant's Fourth Amendment claim, she was on notice that it was her obligation to allege and prove standing. *Id.*

(citing *Wilson,* 692 S.W.2d at 669). As in *Wilson*, the Court in *Klima* did not hold the State conceded or aquiesced to standing.

Because neither *Wilson* nor *Klima* support the proposition for which they are cited, I would not conclude the State conceded or acquiesced to standing. Moreover, the majority's position is inconsistent with authority from the Texas Court of Criminal Appeals and this court that standing may be raised by this court *sua sponte*. *Kothe,* 152 S.W.3d at 59-60; *Millard Mall Svcs., Inc.*, 352 S.W.3d at 251. And this court has recently done so in *Costin v. State*, No. 14-16-00470-CR, 2018 WL 1278515, at *1 (Tex. App.—Houston [14th Dist.] Mar. 13, 2018, no pet.) (mem. op., not designated for publication); *Costin v. State*, No. 14-16-00470-CR, 2018 WL 2085602, at *1 (Tex. App.—Houston [14th Dist.] Mar. 13, 2018, no pet.) (mem. op., not designated for publication) (Donovan, J., dissenting).

As to the question of whether appellant met his burden, the majority utilizes only the intrusion-upon-property-approach. *See Williams v. State*, 502 S.W.3d 254, 261 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In *Williams*, this court addressed standing under that theory after having already concluded that the defendant lacked standing to challenge the search under a reasonable-expectation-of-privacy theory. *Id.* at 260. Likewise, in *Castillo v. State*, No. 14-16-00296-CR, 2017 WL 4844481, at *4 (Tex. App.—Houston [14th Dist.] Oct. 26, 2017, no pet.) (mem. op., not designated for publication), we considered both theories. In this case, the majority chooses not to address the reasonable-expectation-of-privacy theory.

Under the intrusion-upon-property-approach, the majority considers whether appellant "had a sufficient proprietary or possessory interest in the place or object searched." *Williams*, 502 S.W.3d at 261; *Castillo*, 2017 WL 4844481, at *5. The majority holds "evidence offered by the State demonstrated that appellant had a sufficient proprietary or possessory interest in Dreams Auto Customs to have

4

standing to challenge the search." *Williams*, 502 S.W.3d at 260; *Castillo*, 2017 WL 4844481, at *5. The evidence relied upon by the majority is:

1. testimony from Arnold that appellant was an owner of the business;
2. testimony from Arnold that "they were Foreman's computer systems;"
3. and mail in a storage room inside the auto shop was addressed to appellant.

The majority concludes this evidence establishes the computer in question was appellant's personal property. The majority cites no authority applying the intrusion-upon-property theory to confer standing for Fourth Amendment purposes on the business owner for company equipment on commercial premises. Without more, I would not hold that company equipment is the business owner's "own personal 'effects'" such that a search of it constitutes a trespass upon the business owner. *See Ford v. State*, 477 S.W.3d 321, 328 (Tex. Crim. App. 2015) (recognizing that a Fourth Amendment claim may be based on a trespass theory of search (one's own personal "effects" have been trespassed), or a privacy theory of search (one's own expectation of privacy was breached)). I would conclude that appellant failed to show his own personal effects were trespassed and therefore under the intrusion-upon-property theory failed to meet his burden to establish standing. *See Ford*, 477 S.W.3d at 328.

I would further analyze standing under the privacy theory and conclude appellant has not met his burden to show (1) that he had a subjective expectation of privacy in the place or property searched and (2) that society would recognize that expectation of privacy as being objectively reasonable. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013); *Lown v. State*, 172 S.W.3d 753, 759 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Photographs admitted into evidence show the computer for the audio surveillance system was in an office with two desks. Although there was a lock on the door, it was not locked and no keys were required

for entry. The testimony of Officer Douglas Ertons was that the computer was not password protected. There is no evidence that appellant ever used the computer, much less that he had dominion or control over it, or the right to exclude others from its use. There is no evidence as to whether appellant primarily occupied and controlled the office in which the computer was located or had the right to exclude others from it. The computer itself was not password protected. Considering all of these facts, appellant failed to show that he had a subjective expectation of privacy in the computer seized or that any expectation of privacy he had was one society would recognize as being objectively reasonable. *See Granados v. State*, 85 S.W.3d 217, 222–23 (Tex. Crim. App. 2002); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

Because appellant did not meet his burden to show that he had standing to complain of the seizure under either privacy theory, I would conclude the trial court did not err by denying the motion to suppress. *See Betts,* 397 S.W.3d at 203–04 (listing the *Granados* factors); *see also Myrick v. State,* 412 S.W.3d 60, 66 (Tex. App.—Texarkana 2013, no pet.).

## HARM

Furthermore, I would conclude the alleged error is not reversible. The error, if any, in admitting the videotape does not automatically merit reversal. Constitutional errors are reversible unless the appellate court determines the error did not contribute to the conviction or punishment beyond a reasonable doubt. Tex. R. App. P. 44.2(a). Non-constitutional errors are reversible if they affected a defendant's substantial rights. Tex. R. App. P. 44.2(b).

Assuming, without deciding, appellant is correct that the alleged error is constitutional, it is subject to harmless-error analysis. *See Rubio v. State,* 241 S.W.3d 1, 3 (Tex. Crim. App. 2007). In other words, this Court will reverse the conviction

unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *Id.* If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt. *Id.* In making this determination, we should not focus on the propriety of the outcome of the trial but should instead calculate the probable impact of the error on the jury, in light of all other evidence available. *Id.* We consider evidence of the defendant's guilt as a factor in our analysis but the ultimate question is whether we are able to determine beyond a reasonable doubt that the error complained of did not contribute to the jury's verdict. *Id.*

The majority determines the erroneous admission of the video is reversible error because it was "the only strong evidence showing appellant's involvement in the offenses." I disagree.

Merchant testified that "Junior" introduced him to his father at a garage. Merchant identified appellant in-court as the man Junior identified as his father. Merchant and Glekiah had a second meeting with appellant and Junior at the garage. It was on the occasion of the third meeting with appellant and Junior that the actions underlying these cases occurred. Merchant met appellant three times before identifying him in-court as having been involved in the offenses.

Merchant testified that appellant told "the guy that was stepping on [his] head" to pick him up. Appellant had a gun and threatened Merchant with it. Appellant "gave the order" to bring a clothes iron and said, "Plug it in and burn his side." The record reflects that in open court Merchant stood up, pulled up his shirt, and showed a burn mark on his skin. A clothes iron was found at the garage and was introduced into evidence as State's Exhibit No. 31. Merchant testified that appellant told the others to put them in the van. According to Merchant, everyone in the auto shop was

receiving their instructions from appellant. Appellant was in the van when Merchant and Glekiah tried to escape and someone said to shoot them; Merchant was shot multiple times. During cross-examination, Merchant testified that appellant told Merchant that he, appellant, would bring $100,000.

Glekiah testified the police showed him a photospread four days after the incident. He selected a person out of the photospread and signed it. The photospread was admitted into evidence and the jury was able to compare the photograph of the man that Glekiah identified to appellant.

Glekiah identified appellant in-court as the person at the garage where he and Merchant were going to "switch the money." Appellant used a remote to close the garage door and said, "guys" and other men came toward Merchant and Glekiah. Glekiah testified that appellant had a gun. Gasoline was poured on Glekiah and appellant said, "You going to burn." He had a lighter and lit it. Glekiah testified appellant was "the boss" and he told the others "what to do." Glekiah asked to leave but appellant would not let him. Glekiah testified that appellant gave the order to get the iron. Appellant took Glekiah's driver's license. Appellant told someone to get the van and to "[t]ake them to the spot and I will be there." Appellant said he was going to kill them. According to Glekiah, appellant was "in charge."

This is "strong evidence" of appellant's involvement in the offenses. Generally, admission of evidence that was cumulative is harmless beyond a reasonable doubt. *See Estrada v. State*, 313 S.W.3d 274, 302 n. 29 (Tex. Crim. App. 2010) (noting that any preserved error with respect to admission of complained-of evidence was harmless in light of "very similar evidence" admitted without objection); *McNac v. State*, 215 S.W.3d 420, 424–25 (Tex. Crim. App. 2007) (in harm analysis, concluding that the "unchallenged evidence [was]

8

essentially cumulative" of the challenged evidence); *Davis v. State,* 203 S.W.3d 845, 855 (Tex. Crim. App. 2006) (holding harmless beyond a reasonable doubt admission of "important" evidence that was cumulative); *Dowthitt v. State,* 931 S.W.2d 244, 263 (Tex. Crim. App. 1996) (evidence harmless beyond a reasonable doubt where other physical evidence strongly connected defendant to murders); *Jeffley v. State,* 38 S.W.3d 847, 859–60 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (determining that jury did not place a great deal of weight on potentially inadmissible confession because appellant had also made an admissible confession). The testimony of Merchant and Glekiah established that both complainants had met appellant prior to the night in question. They both identified appellant and gave detailed testimony about his involvement in the offenses. Thus the video was cumulative of trial testimony establishing appellant's identity. *See Meggs v. State*, 438 S.W.3d 143, 147 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (concluding admission of the evidence sought to be suppressed did not materially affect the jury deliberations admission in light of other evidence establishing the defendant was present at the murder scene).

I disagree with the majority's reliance upon the corroborating effect of the video as it is based upon an assessment of the complainants' lack of credibility. Credibility is a matter solely for the jury to decide. *Criff v. State*, 438 S.W.3d 134, 138 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Cain v. State,* 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997)).

The video does corroborate some of complainant's testimony but it was not the only corrobative evidence of what happened:

> [W]itnesses driving on the service road of Highway 290 observed complainants Moses Glekiah and Richard Merchant tumble from the rear of a van onto the road. Complainants were bound with zip ties and

their mouths were taped shut with duct tape. Witnesses observed that complainants had been shot and were bleeding.

Because those same complainants gave eyewitness accounts at trial as to appellant's involvement, I would conclude beyond a reasonable doubt that the error, if any, in admitting the video tape did not contribute to appellant's conviction. *Id.*

**CONCLUSION**

For these reasons, I respectfully dissent.

/s/    John Donovan
Justice

Panel consists of en banc court Chief Justice Frost and Justices Boyce, Christopher, Jamison, Busby, Donovan, Brown, Wise and Jewell (Jamison, J., dissenting) (Donovan, J., dissenting).

Publish — Tex. R. App. P. 47.2(b).