**Opinion issued February 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00969-CR

———————————

## LUCIANO VARGAS PADILLA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 69079**

---

## O P I N I O N

Appellant, Luciano Vargas Padilla, was charged by indictment with illegal investment in cocaine.[1] Appellant pleaded not guilty. The jury found him guilty, and the trial court sentenced him to 10 years' confinement. In three issues,

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.126(a)(3), .102(3)(D), .115(a), (f) (Vernon 2010).

Appellant argues (1) the trial court abused its discretion by denying his motion to suppress, (2) he suffered egregious harm due to the trial court's failure to include a jury instruction concerning evidence corroborating a confidential informant's testimony, and (3) there was insufficient evidence to corroborate the confidential informant's testimony.

We affirm.

## Background

On September 13, 2012, Fernando Renteria spotted a man in a store whom he believed to be a drug dealer. He approached the man, who confirmed being a drug dealer. Renteria informed him that he knew someone nicknamed "Chano," who was interested in buying a kilogram of cocaine. Renteria asked the man to wait to meet Chano. The man agreed.

Unknown to Renteria, the man he was speaking with worked on occasion as a confidential informant with the Brazoria County Sheriff's Office. The informant would, as he did with Renteria, identify himself to others as a drug dealer and agree to sell drugs to people seeking to buy some. Sergeant J. Brawner, of the Brazoria County Sheriff's Office, testified at trial that he had worked with the confidential informant many times before. Sergeant Brawner testified that the confidential informant's information had proven reliable in the past.

The informant waited at the store. Eventually, Appellant and Carlos Bernabe arrived at the store. Appellant introduced himself to the informant as Chano and began negotiating a price for a kilogram of cocaine. Appellant told the informant that, if he was satisfied with the quality of the cocaine, he would buy larger amounts in the future. Appellant and the informant agreed on a price and planned to meet again the next day to exchange the drugs.

The next morning, the informant contacted Sergeant Brawner and told him about the requested drug sale. The informant met with Sergeant Brawner. He then called Renteria to confirm the plans to meet later that morning. The conversation was recorded and later translated from Spanish to English. The informant translated the conversation to Sergeant Brawner at the time.

Sergeant Brawner and the informant planned that the informant would ask to see the money at the meeting location. The informant would wear a device to record the conversation he had with the others. If the others showed him that they had the money, the informant would drive to a location where the drugs were claimed to be stored with the others following him. If the informant saw the money at the meeting, he would give a signal to Sergeant Brawner. Then Sergeant Brawner would have a uniformed officer pull the car over while they were driving.

Sergeant Brawner searched the confidential informant and his vehicle to make sure he did not have any contraband or large sums of money on him. The

informant then drove to the gas station where he planned to meet Appellant, Renteria, and Bernabe. During the drive, he received a call from Renteria telling him that a police patrol car was parked at the gas station. They planned to meet at a nearby Burger King instead. The informant informed Sergeant Brawner of the change of location.

The informant drove to the Burger King. He met Appellant, Renteria, and Bernabe and they went inside. During their conversation, Appellant told the informant, "I went early to pick up the material." At trial, Sergeant Brawner testified that it was common for people in the narcotics trafficking trade to speak in code, using words like "material."

After they had eaten, the informant followed Appellant, Renteria, and Bernabe to their car. At the car, Bernabe opened the glovebox, where the money was stored. Bernabe told Appellant to hand the money to Renteria. Appellant did, and Renteria showed the money to the informant. While walking back to his truck, the informant gave the signal indicating he had seen the money. The informant then drove away with Appellant, Renteria, and Bernabe following him.

After Appellant, Renteria, and Bernabe left the Burger King, Sergeant Brawner directed a uniformed officer to stop their car. The stop was not based on any traffic violation and was warrantless. The officer stopped the vehicle and instructed Appellant, Renteria, and Bernabe to get out of the vehicle. After

4

searching the vehicle, the money that had been shown to the informant was found under Appellant's seat.

## Motion to Suppress

In his first issue, Appellant argues the trial court abused its discretion by denying his motion to suppress. Appellant asserts that the officers lacked proper authority to detain him and to arrest him.

## A. Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's determination of historical facts, especially those based on an evaluation of witness credibility or demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Where, as here, a trial judge does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Walter v.*

*State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We will defer to the trial court's fact findings and not disturb the findings on appeal unless the trial court abused its discretion in making a finding not supported by the record. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

**B.      Analysis**

After Appellant, Renteria, and Bernabe left the Burger King, Sergeant Brawner directed Investigator West to stop their car. The stop was not based on any traffic violation and was warrantless. Appellant asserts that the officers lacked proper authority to detain him and to arrest him. The relief that Appellant sought in his motion was the suppression of the money found in the search of the car in which he was riding.

To demonstrate standing to challenge the search of another person's vehicle, the defendant must show that he personally has a legitimate expectation of privacy in the searched vehicle. *State v. Klima*, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996). "A passenger in a vehicle does not have a legitimate expectation of privacy in a vehicle where he fails to assert a possessory interest in the vehicle or the property seized." *Trinh v. State*, 974 S.W.2d 872, 874 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citing *Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985)).

Appellant has claimed no possessory interest in the car in which he was riding or in the money seized. Accordingly, he acknowledges that there is no general expectation of privacy for him to assert. Nevertheless, as Appellant points out, "a mere passenger can challenge the search of the automobile in which he is riding *if* the search resulted from an infringement (such as an illegal detention) of the *passenger's* Fourth Amendment rights." *Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984). It is not enough to show that the passenger's rights were violated. *Id.* Instead, the passenger must show that the evidence was obtained by "exploitation of that illegality" against the passenger's rights. *Id.*

One of Appellant's grounds for his motion to suppress was that he was illegally detained. If this is correct, then the evidence obtained as a result of that illegal detention must be suppressed. *See id.*; *Trinh*, 974 S.W.2d at 874. Accordingly, we review the evidence presented at the hearing on the motion to suppress to determine whether the money found from searching the car was obtained by exploitation of an illegal detention of Appellant. *See Lewis*, 664 S.W.2d at 348.

Appellant argues that "[t]he sole reason for the stop was the belief" that probable cause existed "to arrest the occupants of the vehicle for the felony offense of illegal barter, expenditure, or investment." Appellant reasons that "[i]f there

7

was not probable cause to arrest the men, then the stop of the vehicle for the purpose of arresting them" constituted an illegal detention.

It is true that the officers did not stop the car based on a traffic violation. Instead, they stopped the car based on information that the men were trying to purchase cocaine from the confidential informant. This does not mean that the officers were required to have probable cause to arrest Appellant and the other two men before conducting the stop. Instead, an officer can conduct an investigative detention if the officer has a *reasonable suspicion* that a person is violating the law. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.* "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). "[P]assengers in an automobile are subject to temporary investigative detentions in the same manner as pedestrians." *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

"In situations involving the police's use of an informant, we consider the informant's reliability in analyzing the totality of the circumstances." *Smith v.*

*State*, 58 S.W.3d 784, 789 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "A confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability." *Id.* at 790. In this regard, "the informant's veracity, reliability, and basis of knowledge are highly relevant." *State v. Sailo*, 910 S.W.2d 184, 188–89 (Tex. App.—Fort Worth 1995, pet. ref'd) (citing *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328 (1983)).

Sergeant Brawner testified at the hearing on the motion to suppress. A confidential informant had contacted Sergeant Brawner, telling him that someone had offered to buy cocaine from him. Sergeant Brawner had worked with the confidential informant many times before. He testified that the confidential informant's information had proven reliable in the past.

The confidential informant provided Sergeant Brawner with information about the informant's first meeting with Appellant and Renteria. Renteria was looking for someone to sell cocaine to Appellant. Appellant was interested in buying one kilogram of cocaine.

Based on this information, Sergeant Brawner and the confidential informant agreed to set up a staged transaction. In the presence of Sergeant Brawner, the confidential informant called Renteria to set the time and location of the

9

transaction. The conversation was in Spanish. The confidential informant translated the conversation for Sergeant Brawner.

The confidential informant agreed to meet Renteria and the others at a gas station in Manvel, Texas. Sergeant Brawner searched the confidential informant and his vehicle to make sure he did not have any contraband or large sums of money on him. He then equipped the confidential informant with an audio recording device to record the conversation. Sergeant Brawner and the confidential informant planned a signal for the confidential informant to give if he saw the money.

The confidential informant drove to the meeting location. On his way there, the informant talked to Renteria on his cell phone. Renteria told the informant that a police patrol car was in the parking lot. They agreed to meet at a nearby Burger King. The informant notified Sergeant Brawner of the change in location.

At the Burger King, the confidential informant went inside with Renteria, Appellant, and Bernabe. Some time later, they came out and walked to Renteria, Appellant, and Bernabe's car. After they talked, the confidential informant walked to his truck. While walking to his truck, the confidential informant gave the signal that he had seen the money. The confidential informant drove away, leading Appellant, Renteria, and Bernabe to the location where the drugs were purported to

be held. During the drive, Sergeant Brawner instructed Investigator West to stop the car in which Appellant was riding.

The confidential informant had been used before by Sergeant Brawner and had provided reliable information in the past. The informant called Renteria with Sergeant Brawner present. In that conversation, the informant and Renteria scheduled a time and place to meet. After the meeting, the informant signaled that he had seen the money intended to buy cocaine. We hold this evidence along with the reasonable inferences to be drawn from it is sufficient to create a reasonable suspicion that Appellant and the other occupants of the vehicle were violating the law. *See Sailo*, 910 S.W.2d at 188–89 (holding informant's veracity, reliability, and basis of knowledge are highly relevant to inquiry).

Appellant argues that the informant was not reliable because some staged drug buys he had participated in before did not lead to arrests and because he did not meet the informant at the originally planned location. Sergeant Brawner testified that it is common for drug buys not to be completed because the other person never brings the drugs or the money. He explained that this does not mean that the informant was wrong or gave bad information. The trial court was entitled to credit this testimony. *See Maxwell*, 73 S.W.3d at 281 (holding trial court is sole and exclusive judge of witnesses' credibility). Similarly, it was the trial court's province to weigh the significance that the meeting place changed due to a police

11

patrol car being at the original planned location. *See Matthews*, 431 S.W.3d at 603 (holding reasonable suspicion is based on totality of circumstances).

Appellant's other ground for suppressing the evidence was that he was illegally arrested. In *Lewis*, the defendant sought to suppress evidence found in a car in which he was riding based on the claim that his detention lasted too long and, as a result, became illegal. 664 S.W.2d at 349. The court, assuming that the detention became illegal, rejected the claim that the evidence was obtained by the exploitation of the continued detention. The defendant had been removed from the car before the search took place. *Id.* at 348–49. "Once the initial legal detention became an illegal one, the [defendant]'s presence was irrelevant to the officer's decision to search. . . . Thus, in no way was *her* detention necessary to perform the search." *Id.* at 349.

The same reasoning applies here for Appellant's claim that his arrest was illegal. Even assuming Appellant's arrest was illegal, the search was conducted and the money was found before Appellant's arrest. Accordingly, the money could not have been obtained by exploitation of Appellant's arrest. Furthermore, even if we assume Appellant's detention turned into an arrest before the search, there is nothing connecting Appellant's detention or arrest to the officers' search of the car. Because the two are unrelated, Appellant's detention and arrest cannot be a basis for suppressing the evidence. *See id.*

12

We overrule Appellant's first issue.

## Corroboration of Confidential Informant Testimony

In his third issue, Appellant argues there was insufficient evidence to corroborate the confidential informant's testimony.

## A.    Standard of Review & Applicable Law

Article 38.141 of the Code of Criminal Procedure provides,

> A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a) (Vernon 2005). The corroboration requirement is similar to the corroboration required of an accomplice witness, and the same standard of review applies for each. *Malone v. State*, 253 S.W.3d 253, 257–58 (Tex. Crim. App. 2008).

To measure the sufficiency of the corroborating evidence, we eliminate the accomplice evidence from the record and determine whether the remaining inculpatory evidence tends to connect the defendant to the offense. *Id.* at 257. In applying this standard, we view the evidence in the light that most favors the jury's verdict. *See Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). We consider the combined weight of the non-informant evidence, even if that evidence

is entirely circumstantial. *See Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Corroborating evidence that shows only that the offense was committed is not sufficient. CRIM. PROC. art. 38.141(b); *Malone*, 253 S.W.3d at 257. Yet, the corroborating evidence does not need to be sufficient by itself to establish that the accused is guilty beyond a reasonable doubt. *Smith v. State*, 392 S.W.3d 190, 195 (Tex. App.—San Antonio 2012, pet. ref'd).

Likewise, the corroborating evidence need not directly link the accused to the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). Circumstances that appear insignificant may constitute sufficient evidence of corroboration. *Malone*, 253 S.W.3d at 253, 257. Though "mere presence" is insufficient corroboration, evidence that the accused was at or near the scene when or about when it was committed may sufficiently tend to connect the accused to the crime, provided the evidence is "coupled with other suspicious circumstances." *Id.* at 257.

Because each case must rest on its own facts, corroboration does not require a set quantum of proof. *Id.* The single requirement is that "some" non-informant evidence, on which rational jurors could properly rely, tends to connect the accused to the commission of the offense. *Id.* at 257–58.

**B.      Analysis**

Appellant acknowledged at trial that he was present with Renteria and Bernabe during the meeting at Burger King.  He went into the Burger King with Renteria, Bernabe, and the confidential informant.  Appellant admitted that his voice was on the recording taken inside the Burger King.[2]  Appellant acknowledged that he was the person that said, "I went early to pick up the material."  Sergeant Brawner testified that it was common for people in the narcotics trafficking trade to speak in code, using words like "material."  *See Malone*, 253 S.W.3d at 259 (considering statements "put it together" and "cooked to customer satisfaction" as part of corroborating evidence).

After they left the Burger King, the informant followed Appellant, Renteria, and Bernabe to their car.  Appellant admitted that, at the car, he took the bundle of money out of the glove box and gave it to Renteria, who then showed it to the informant.  The bundle was wrapped in plastic and taped. It totaled $28,500 in cash, nearly the entire amount they were going to pay for cocaine.  After Appellant was stopped, the money was found beneath Appellant's seat.

---

[2]      Appellant admitted that his voice was on the recording, but he denied that the recording was from inside the Burger King.  Instead, he claimed it was a recording of a telephone conversation.  Viewing the record in the light most favorable to the verdict, we must conclude that the recording took place inside the Burger King. *See Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (holding record is viewed in light most favorable to verdict).

The evidence shows then, that Appellant was present during the meeting with the informant. Appellant referred to "material" during a conversation with the informant. He handled the money so it could be shown to the informant. And the money was under his seat after he was stopped. We hold that suspicious circumstances concerning Appellant's presence tends to connect Appellant to the crime. *See id.* at 257. We overrule Appellant's third issue.

## Jury Instruction on Confidential Informant

In his second issue, Appellant argues he suffered egregious harm due to the trial court's failure to include a jury instruction concerning evidence corroborating a confidential informant's testimony.

### A.    Standard of Review

When reviewing jury-charge error, we first determine if error actually exists in the jury charge. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Johnson v. State*, 227 S.W.3d 180, 182 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). If we find error, we then determine whether it harmed the appellant. *Ngo*, 175 S.W.3d at 743.

The degree of harm requiring reversal depends upon whether an objection was raised to the error at trial. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). If appellant did not make a proper objection at trial, appellant "will obtain a reversal only if the error was so egregiously harmful that he has not had a

fair and impartial trial." *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

**B.    Analysis**

As we addressed in Appellant's third issue, a defendant cannot be convicted based on the testimony of a confidential informant unless that testimony is corroborated by other evidence tending to connect the defendant to the crime. CRIM. PROC. art. 38.141(a).  Failing to instruct the jury on this requirement is error. *Simmons v. State*, 205 S.W.3d 65, 77 (Tex. App.—Fort Worth 2006, no pet.).

Next, we consider harm.  Appellant acknowledges that there was no objection to the failure to include the confidential-informant-corroboration instruction.  Accordingly, we review the record for egregious harm.  *See Almanza*, 686 S.W.2d at 171.  "Under the 'egregious harm standard,' the omission of a corroborating-evidence instruction may be rendered harmless if other evidence than the testimony of the accomplice witness or informant does exist that fulfills the purpose of the instruction." *Simmons*, 205 S.W.3d at 77.  "[T]he omission of an [informant] witness instruction is generally harmless unless the corroborating . . . evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).

As we held in Appellant's third issue, there is sufficient corroborating evidence to support the confidential informant's testimony. For the same reasons stated in the third issue, we do not find the corroborating evidence so unconvincing that it renders the State's overall case clearly and significantly less persuasive. *See id.* We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Publish. TEX. R. APP. P. 47.2(b).

18