In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00302-CR**
_____

**GARY RENE SMITH JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 1A District Court**
**Jasper County, Texas**
**Trial Cause No. 12880JD**

**MEMORANDUM OPINION**

Smith was indicted on August 31, 2016, for the offense of delivery of a controlled substance by constructive transfer for conduct occurring on or about March 10, 2015. A jury trial was held in May of 2017, but the jury was unable to return a verdict. The matter was retried to a jury in July of 2017, and the jury found Smith guilty of delivery of a controlled substance, namely methamphetamine, in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety

1

Code Ann. § 481.112(d) (West 2017).[1] The jury assessed punishment at seventy years' imprisonment. In two issues, Smith challenges the admission of evidence at trial and the sufficiency of the evidence to support his conviction. We affirm.

Evidence at Trial

Testimony of Marie Prince

Marie Prince, a senior forensic chemist with the Drug Enforcement Administration (DEA) in Dallas, testified that she received State's Exhibits 1 and 2 on July 12, 2016, at the Dallas DEA lab. Prince identified Exhibit 1, a bag with a substance therein, and Exhibit 2, fingerprint evidence. Prince testified that she conducted presumptive testing as well as further scientific analysis on the contents of State's Exhibit 1, and Prince identified State's Exhibit 3 as the report she generated pursuant to her analysis. According to Prince, her report identified the substance in State's Exhibit 1 as methamphetamine hydrochloride and dimethyl sulfone, with a net weight of 6.25 grams, and purity of about 95 percent. State's Exhibit 3, titled "Chemical Analysis Report," was admitted into evidence.

---

[1] We cite the current statutes herein as subsequent amendments do not affect our disposition.

<u>Testimony of Alfred Spikes</u>

Alfred Spikes, a detective with the narcotics division of the Beaumont Police Department, testified that he assisted the DEA and Jasper Police Department with a controlled buy in Jasper on March 10, 2015. Spikes agreed that he was told the controlled buy was to occur at a Shell station on the north side of town and he was given a description of the vehicle he was to look for. According to Spikes, when he arrived at the Shell station, he saw a white female sitting on the driver's side of a vehicle meeting the description he had been given. Spikes testified that he observed a black male exit the store and walk toward the same vehicle and get in on the passenger's side. Spikes explained that after a few moments, the vehicle left, and he followed it to a trailer house about half a mile away. Spikes testified he then saw the defendant get out of the vehicle and Spikes left the area shortly thereafter because there were people standing outside and Spikes did not want his vehicle to be seen.

<u>Testimony of Joshua Hadnot</u>

Joshua Hadnot testified that he is a detective with the Jasper Police Department, and he recalled speaking with a confidential informant (CI). According to Hadnot, once a CI has completed work with the police department, Hadnot does not make any promises or guarantees regarding any pending case the CI might have.

Hadnot testified that he asked the DEA to become involved with a controlled buy in March of 2015 because the Jasper Police Department did not have adequate funds to complete the transaction. According to Hadnot, he went to the prearranged meeting place along with Officer Neal, and DEA agents as well as the CI were present. Hadnot agreed that prior to the controlled buy, the CI and her vehicle were searched for contraband, and none was found. Hadnot testified that the CI was outfitted with a camera and given money for the controlled buy. Hadnot agreed that the officers were able to listen to the CI's end of her phone conversations.

According to Hadnot, the CI went alone to a Shell station for the controlled buy as she was advised to do. Hadnot and Officer Neal followed her, and they parked on the other side of the highway. Hadnot observed the CI enter the store at the gas station. Hadnot agreed that prior to the controlled buy, he was familiar with Smith and his appearance and he was able to identify Smith when he approached the store at the gas station that day. According to Hadnot, he and Officer Neal observed the CI's vehicle pull away. Hadnot testified that he and Officer Neal then went to a prearranged meeting place where officers searched the CI and her vehicle again. Hadnot agreed that he was present when the CI turned over a "black ball" to the DEA along with "change from the $600 she was provided earlier[]" and he was present when the camera was recovered from her. Hadnot believed that the DEA

4

took the suspected controlled substance, the "black ball," with them. According to Hadnot, about two weeks after the controlled buy, officers could no longer get in touch with the CI and he subsequently learned that the CI had violated the terms of her probation.

Hadnot agreed that he watched the video of the controlled buy after the fact. State's Exhibits 5 through 9 were entered into evidence, and Hadnot identified them as photographs of Smith taken from the video of the controlled buy.

Testimony of DEA Agent

A special agent ("the Agent") with the DEA in Beaumont, testified that she has worked "at least hundreds[]" of controlled buys. She agreed that she received information about the defendant from a confidential source in February of 2015 and that Detective Hadnot brought the CI to the Agent's office. According to the Agent, no one with the DEA made any promises to the CI.

The Agent agreed that a controlled buy was set up for March 10, 2015, in Jasper County. The Agent testified that she and Phillip Smith, a special agent with the Beaumont Police Department assigned to the DEA, Joshua Hadnot, Jimmy Neal, and Alfred Spikes were on the surveillance team. The objective of the controlled buy was a purchase of one-half an ounce (or about fourteen grams) of methamphetamine. The Agent agreed she conducted a search of the CI prior to the controlled buy and

5

found no contraband. The Agent then provided the CI with $600 in buy money. According to the Agent, one of the officers set the CI up a discreet camera and set up an app on the CI's phone so the officers could listen in real time.

The Agent testified that the controlled buy took place in Jasper at a Shell station on Highway 96. The officers followed the CI to the area and parked across the street from the Shell station. The Agent testified that she heard a report on the radio about a black male wearing black shorts and a black and gray striped hoodie and then she observed a person matching this description walking towards the gas station, and then enter the store, and exit the store. According to the Agent, she observed the man go to the passenger's side of the CI's vehicle after he left the store, and she observed the man as he and the CI sat in her vehicle for a few minutes, and then they left the area. The Agent agreed she saw Detective Spikes follow the CI's vehicle, and she explained that she heard on the radio that the CI had driven to a residence on Bowie Street and that Spikes had an eye on the CI's vehicle. The Agent testified that she went to the address on Bowie Street and then met the CI and other officers at "the meet location."

According to the Agent, she searched the CI again and the CI's vehicle was also searched, and the CI turned over $300 and a black plastic ball to her, which the Agent placed into a drug evidence bag and transported to the DEA office in

6

Beaumont for processing. The Agent also agreed that the officers recovered the camera from the CI.

State's Exhibits 10 through 13 were admitted into evidence. The Agent identified the exhibits as accurate photos of the substance recovered, and the photos were taken in her office. The Agent visually identified the substance depicted as methamphetamine and indicated that it tested positive for methamphetamine. According to the Agent, the combined weight of the substance and the black plastic packaging was 7.2 grams. The Agent testified that she packaged the substance and sent it to the lab in Dallas, and she identified State's Exhibit 1 as the material she bagged and sent to Dallas.

Testimony of the CI

The CI testified that, at the time of trial, she was confined in the Jasper County Jail for violating the terms of her community supervision and that she had a prior conviction for possession of a controlled substance. The CI agreed that she met with Hadnot and the Agent and entered into an agreement to be a CI. The CI also agreed that she brought up the defendant's name when she agreed to be a CI "[b]ecause [she] knew that he was very well-known around and he was distributing a lot of methamphetamine in the area." The CI testified that she was not promised anything for her work as a CI by Hadnot, the Agent, or anyone with the DEA.

7

According to the CI, through phone contact, she had set up with Smith to purchase one ounce of methamphetamine for $600. The CI agreed that she met with Hadnot, the Agent, Neal, and some DEA officers at a prearranged meeting location on March 10, 2015, where she and her vehicle were searched for contraband and the Agent gave her $600 in buy money. The CI also agreed that the officers set her up with a camera. The CI testified that, after this initial meeting, she drove to a convenience store at a Shell station on Highway 96 by herself, but that some of the officers followed her to the area. The CI identified the defendant as Smith.

The CI testified that she went into the store to buy a beverage and cigarettes and then returned to her vehicle. According to the CI, after a time, Smith approached her vehicle and got into the vehicle. The CI testified that she and Smith drove to a residence on Bowie Street, where they sat and talked for a few minutes. The CI explained that "[t]here was never a hand-to-hand transaction[,]" but rather she left money for Smith in the cupholder, and Smith left the drugs in the cupholder before he got out of her vehicle.

According to the CI, after Smith exited her vehicle, she met Hadnot and DEA agents north of town, and she told the officers that the drugs were in her vehicle. The CI testified that the Agent searched her and the other officers recovered the drugs and searched her vehicle and purse. The CI also explained that the officers recovered

8

the camera as well as the "$300 change[.]" The CI agreed that she understood that everything was being audio and video recorded.

State Exhibits 14 and 15 were admitted into evidence and played for the jury. The CI agreed that she had watched the video clips in State's Exhibit 14. The CI also agreed that in the recording, Smith says he has seven grams, or a quarter of an ounce, and that she asks "$300 for 7 grams?" The CI agreed that just before Smith got out of her vehicle, he left the black ball and $300 in change in the cupholder. The CI also agreed that State's Exhibit 16, a screenshot from the video recording, depicted "the ball right there beside the cigarette pack[]" as well as the $300 behind the cigarettes. According to the CI, the recording depicts her as telling Smith "Just holler at me when you're ready, when you're good again . . . I'm going to try to flip it like this" and Smith responds, "It'll be in a couple of hours[.]"

The State rested, and the defense rested without calling any witnesses. The jury found Smith guilty and assessed punishment at seventy years' imprisonment. Smith timely appealed.

## Admission of Evidence of Extraneous Offense

In his first issue, Appellant argues that the trial court erred in admitting evidence of extraneous offenses and a prior conviction, namely video evidence of what occurred in the CI's vehicle. According to the Appellant, the State failed to

9

prove beyond a reasonable doubt that Appellant "actually committed" the alleged extraneous offenses, and the probative value of admitting evidence of extraneous offenses and a prior conviction was outweighed by the danger of unfair prejudice, confusion of the issues, and clearly misled the jury. Appellant further argues that the audio portion of the recording did not relate to a drug transaction but did relate to "their stints within the federal prison system."

Prior to opening arguments, and outside the presence of the jury, the State advised the Court that it intended to use four video exhibits used in the first trial. The prosecutor explained that video exhibits 2 and 3 "had some problems with some extraneous offense stuff[]" and that exhibit 3 "was previously edited, [and] sounds good." The prosecutor also explained that there was not time to edit video exhibit 2, but that he had identified the point in the video clip "where this conversation starts about extraneous stuff" and proposed "just to go to that point" instead of editing the video. When the trial court asked whether the defense was agreeable, defense counsel responded, "Yeah. I just need to look at it, the exact times."

During trial, but outside the presence of the jury, the State again explained to the court that video exhibit 2 included references to extraneous offenses and "it's probably something that . . . shouldn't be put in front of the jury." The State told the court it intended to play video exhibit 2 and proposed turning off the sound during

10

the portion of the video that included references to extraneous offenses. During trial, the following exchange occurred outside the presence of the jury:

> [State's counsel]: Your Honor, when the jury comes back in, I believe we're going to be playing -- and this would be Video 2 on that disc and we talked about this earlier and there's some issue with some conversation regarding some extraneous acts and offenses and Daniel and I just went back and listened to it again and it's really hard to pick up the conversation but there are some things in there that could be seen or heard as incriminating against the Defendant. So to sort of split the difference, what we're going to do is play that one and then stop it at 11:56:40, which I believe starts all this potential talk about extraneous acts.
>
> THE COURT: Okay. So that sounds good. And your objection?
>
> [Defense counsel]: Still objection to that video being played as is and not the one we used in the original proceeding -- or previous proceeding.
>
> THE COURT: Do you have a reasoning for that?
>
> [Defense counsel]: Well, without looking -- reviewing the video and the time exact one, so I can't -- I don't remember exactly where that stop point is but, of course, my -- my position is, you know, anything that would be any extraneous offenses or anything -- anything that -- because like my previous argument, I believe that conversation was too convoluted to really decipher out or divide it out. So that's why I was asking that we use the previous video one that was redacted.
>
> THE COURT: Okay.
> . . .
> You want to listen to it?
>
> [Defense counsel]: Yeah.

THE COURT: Go ahead.

Won't take but just a few seconds, would it?

[State's counsel]: I think it's about eight minutes there if he listens to the whole thing.

. . . .

THE COURT: Were you able to listen to that?

[Defense counsel]: I did, Judge. I listened to what he was talking about, and I don't have a problem with them doing it that way.

THE COURT: Okay. All right. Just want to make sure.

The video exhibits were admitted as State's Exhibits 14 and 15 and were published to the jury.

Appellate Rule 33.1 provides that as a prerequisite to presenting a complaint for appellate review, the record must show that the party "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint[.]" Tex. R. App. P. 33.1(a)(1)(A); *see also* Tex. R. Evid. 103; *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). To determine preservation of error under Rule 33.1, the issue is whether the "complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal." *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) (citing *State v. Mercado*, 972 S.W.2d 75, 78 (Tex.

Crim. App. 1998)); *see also Reyna*, 168 S.W.3d at 177. "To preserve error regarding the admission of evidence, a defendant must lodge a timely and specific objection. The purpose of requiring the objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000).

According to the record in this case, although the defense initially objected to the admission of the video exhibits because of references to extraneous offenses, ultimately the defense agreed to the admission and publication of the video recordings after the State agreed to stop the audio portion of the video when it pertained to any discussion about extraneous offenses. We are unable to find any further objection by the defense in the appellate record concerning the video exhibits as they were played to the jury. Additionally, there is nothing in our record that states what portion of the audio was played or muted during playback. Appellant has not cited to any other portion of the appellate record where such discussion occurred. *See* Tex. R. App. P. 38.1(i) (an appellate argument must be supported by references to the record). Based upon the record before us, it appears that the State agreed to stop or turn down the audio during the playback when references to extraneous offenses were discussed, and the defense made no objection during the publication of the video exhibits to the jury. Although our record is silent regarding whether

13

some discussion about Appellant's extraneous offenses was played during the video playback, even were we to assume that the State failed to mute such discussion, Appellant waived error as to the admission of this evidence by agreeing to allow the State to use the video and then not objecting at the time of actual playback. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) ("[E]rror regarding improperly admitted evidence is waived if that same evidence is brought in later by the defendant or by the State without objection.").

Furthermore, the record does not reflect that the defense ever made any objection at trial to the video evidence based on Rule 403. Therefore, Appellant failed to preserve any error on his Rule 403 objection, and we need not address it. *See* Tex. R. App. P. 33.1(a); *Wilson v. State*, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010) (citing *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009)). We overrule Appellant's first issue.

## Sufficiency of the Evidence

Appellant's second issue argues that the evidence is legally insufficient to support his conviction. According to Appellant, "there must be evidence to corroborate the testimony of the confidential informant." Appellant argues that the audio and video evidence in this case does not show a drug transaction and there was no other testimony about what occurred inside the CI's vehicle. Appellant's brief

14

argues that without evidence to corroborate the CI's testimony, there is insufficient evidence to prove each element of delivery of a controlled substance.

In reviewing the legal and factual sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 894-95, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Id.* at 902; *see also Jackson*, 443 U.S. at 319. "A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). As the trier of fact, the jury is the sole judge of the weight and credibility of the witnesses' testimony, and on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 899, 905-06. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* at 899 n.13 (citing *Jackson*, 443 U.S. at 319). On appeal, we serve only to ensure the jury reached a rational verdict, and we may not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In our review, we consider both direct and

circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Article 38.141 of the Code of Criminal Procedure provides that

> [a] defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

Tex. Code Crim. Proc. Ann. art. 38.141(a) (West 2005). To measure the sufficiency of the corroborating evidence, we eliminate the accomplice evidence from the record and determine whether any of the remaining evidence tends to connect the defendant to the offense. *See Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). In applying this standard, we view the evidence in the light most favorable to the jury's verdict. *See Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). We consider the combined weight of the non-informant evidence, even if that evidence is entirely circumstantial. *See Padilla v. State*, 462 S.W.3d 117, 126 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)); *see also Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) ("A criminal conviction may be based on circumstantial evidence."). The corroborating evidence does not need to be sufficient by itself to establish that

the accused is guilty beyond a reasonable doubt. *Smith v. State*, 392 S.W.3d 190, 195 (Tex. App.—San Antonio 2012, pet. ref'd).

Likewise, the corroborating evidence need not directly link the accused to the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). Circumstances that appear insignificant may constitute sufficient evidence of corroboration. *Malone*, 253 S.W.3d at 257. Though "mere presence" is insufficient corroboration, evidence that the accused was at or near the scene when or about when it was committed may sufficiently tend to connect the accused to the crime, provided the evidence is "coupled with other suspicious circumstances[.]" *Id.* at 257. Corroboration does not require a set quantum of proof. *Id.* The single requirement is that "some" non-informant evidence, on which rational jurors could properly rely, tends to connect the accused to the commission of the offense. *Id.* at 257-58.

Appellant argues that "[t]he video evidence does not show any transaction occurring between Appellant and the confidential informant and also the audio portion of the video does not capture any conversation of a drug transaction." We disagree. In the video, the CI is heard to say to Smith "3 for 7?" and that she intended to "flip" the drugs quickly. State's Exhibit 16 is described as a picture of the "ball" and the $300 in change. Spikes, Hadnot, and the Agent testified that they searched the CI and her vehicle before the controlled buy as well as afterwards, that they

observed Smith in the CI's vehicle, and that they searched the CI and her vehicle again afterwards and found the black ball of methamphetamine and $300. State's Exhibit 3 identified the ball of drugs as methamphetamine. Upon considering all the evidence, a rational jury could have concluded that the video evidence and witness testimony corroborated the CI's testimony and tended to connect Smith to the commission of the offense charged. *See id.*

Viewing all the evidence in this case in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt—from the evidence presented and reasonable inferences therefrom—that Appellant delivered a controlled substance as alleged in the indictment. Accordingly, we overrule Appellant's second issue and we affirm the trial court's judgment.

AFFIRMED.

_____<br>
LEANNE JOHNSON<br>
Justice

Submitted on March 4, 2019
Opinion Delivered March 20, 2019
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.