

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00191-CR
_____


MICHAEL JEROD WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1683030


Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Tarrant County jury convicted Michael Jerod Williams of murder. *See* TEX. PENAL CODE ANN. § 19.02(c) (Supp.). The jury found the State's habitual offender punishment allegations true and assessed a sentence of life imprisonment. On appeal, Williams argues that the trial court erred by overruling his motion to suppress evidence obtained from his cell phone and by admitting extraneous-offense evidence.[1]

We find that the trial court properly determined Williams abandoned his cell phone while running from the police and, as a result, did not err by overruling his motion to suppress the evidence obtained from it. We also find that the trial court did not abuse its discretion by admitting the extraneous-offense evidence. As a result, we affirm the trial court's judgment.

## I. The Trial Court Did Not Err by Overruling the Suppression Motion

Williams filed a motion to suppress evidence obtained from a cell phone he threw while being chased by police officers attempting to apprehend him on an outstanding warrant. During a pretrial conference, the trial court overruled the motion to suppress based on Williams's motion and the State's written response.[2] In his first point of error on appeal, Williams argues that the trial court erred by overruling his motion.

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

[2]There was no evidentiary hearing on the suppression motion. As a result, the facts recited below are taken from the parties' written filings.

### A.     Factual and Procedural Background

KC Sullivan, a detective with the Fort Worth Police Department (FWPD), submitted his affidavit to obtain a warrant to search the contents of Williams's cell phone. The facts recited in this section are garnered from Sullivan's affidavit.

On April 25, 2021, the FWPD responded to the scene of a shooting and found Harold Yazzie with a gunshot wound to the leg. Yazzie had parked his truck at the Spring Brook Apartments and was with Rayen Diete-Spiff at the time of the shooting. According to Diete-Spiff, an African American male wearing a mask and black clothing had approached Yazzie's truck and demanded money from him. Diete-Spiff told officers that the man stole Yazzie's cell phone and unbuckled Yazzie's seat belt. Yazzie exited the vehicle and struggled with the man, prompting Diete-Spiff to run away from the vehicle. Diete-Spiff said she heard a gunshot as she was running. She told officers that she recognized the perpetrator's eyes and believed him to be Williams, whom she had known for several years. Diete-Spiff provided officers with Williams's cell phone number and said he drove a silver Dodge Nitro vehicle. Yazzie died from his injury.

Matt Anderson, a detective with the FWPD, found a silver Dodge Nitro registered to Williams and located his address. He also learned that Williams had an outstanding warrant for his arrest for a burglary from the Arlington Police Department. Sullivan showed Williams's driver's license photo to Diete-Spiff, and she positively identified Williams as the person she believed robbed and shot Yazzie. Sullivan located surveillance-camera footage showing that a

3

silver Dodge Nitro appeared to follow Yazzie's truck before the shooting, and the footage suggested that Williams was not operating alone.[3]

Sullivan and Anderson went to Williams's home and observed a silver Dodge Nitro in the driveway. According to Sullivan, members of the Fugitive Unit conducted surveillance of Williams's home until other officers could obtain a search warrant for the home and another arrest warrant for Williams. While waiting for the return of the warrants, Officer Rankins[4] from the Fugitive Unit said Williams was in custody for his outstanding burglary warrant.

Rankins explained that the Fugitive Unit attempted to apprehend Williams after observing him leaving his home on a bicycle. When the Fugitive Unit gave chase, Williams abandoned his bicycle and fled on foot. Members of the Fugitive Unit saw Williams throw a cell phone under a vehicle. The State represented that Williams had abandoned the cell phone only twelve hours after the offense to conceal or discard evidence.

Officer Pilar Ramirez of the FWPD was called to the scene and collected a Motorola cell phone numbered IMEI: 351841096161106 with a blue case from underneath the vehicle and placed the cell phone in the FWPD property room. Sullivan conducted an interview with Williams's girlfriend, who confirmed that Williams had a cell phone with a blue case.

In seeking a search warrant for the cell phone, Sullivan wrote:

Based upon my experience, I know that is common for persons involved in criminal offenses to communicate with others through text, chats, and phone calls prior to and after the offense. It is also common for these suspects to take photos, videos, or recordings that may document handguns or clothing worn at the time of

---

[3]Williams's co-defendant was identified as Lucille Wilson, who was offered dismissal of the charges against her in exchange for her truthful testimony.

[4]Rankins's first name is not included in the record.

4

the offense.  I believe that the **Motorola cellular phone IMEI: 351841096161106** collected from under a vehicle at the time of Michael Williams' arrest may have information related to the murder of Harold Yazzie.

After obtaining a search warrant, officers located two pictures of interest, including one of Williams "inside of a vehicle with a mask covering part of his face like a pull-over-your-head mask," and another picture of Williams holding a firearm.

Williams's suppression motion argued that Sullivan's affidavit was insufficient to establish probable cause to search his cell phone, but the trial court overruled the motion.  In its findings of fact and conclusions of law, the trial court determined, among other things, that Williams voluntarily "abandoned the cell phone while fleeing officers who were executing an outstanding arrest warrant" and, as a result, "lack[ed] standing to challenge the admission of evidence obtained from the search of the cell phone."

**B.      Standard of Review**

"We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard." *Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021).  "We give almost total deference to the trial court's findings of fact and review *de novo* the application of the law to the facts." *Id.* (quoting *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019)).  "When a trial judge makes express findings of fact, an appellate court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record." *Id.* (quoting *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017)).  "We will uphold the trial court's ruling if it is correct under any applicable theory of law and the record reasonably supports it." *Id.*

## C. Williams Abandoned His Cell Phone

"The Fourth Amendment protects against unreasonable searches and seizures by government officials." *Martinez v. State*, 689 S.W.3d 30, 38 (Tex. App.—Fort Worth 2024, pet. ref'd) (citing U.S. CONST. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007)). "A defendant seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to produce some evidence that the government conducted a warrantless search or seizure that he has standing to contest." *Id.* (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104–05 (1980); *State v. Martinez*, 569 S.W.3d 621, 623 (Tex. Crim. App. 2019)). For this reason, "a warrant is generally required before a cell-phone search." *Id.*

Here, the search of Williams's cell phone was conducted pursuant to a search warrant, but Williams argued that the affidavit in support of the warrant was insufficient to establish that probable cause existed to believe that evidence of Yazzie's murder would be found on it.

Even so, "[t]o assert a challenge to a search and seizure, a defendant first must establish standing." *Wiltz v. State*, 595 S.W.3d 930, 933 (Tex. App.—Houston [14th Dist.]), *pet. ref'd*, 609 S.W.3d 543 (Tex. Crim. App. 2020) (citing *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004)). This is because "[w]hat constitutes a 'search' for Fourth Amendment purposes— and therefore, what may serve to confer Fourth Amendment 'standing'—may be predicated, as the Supreme Court of the United States has emphasized, on either an intrusion-upon-property theory of search or a reasonable-expectation-of-privacy theory of search." *Id.* at 934 (citing *Florida v. Jardines*, 569 U.S. 1, 11 (2013); *United States v. Jones*, 565 U.S. 400, 406 (2012); *Williams v. State*, 502 S.W.3d 254, 258 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd)).

6

"Although a person may have a reasonable and legitimate expectation of privacy in the contents of his cell phone, he may lose that expectation under some circumstances, such as if he abandons his cell phone . . . ." *State v. Granville*, 423 S.W.3d 399, 409 (Tex. Crim. App. 2014); *see Swearingen v. State*, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003) ("[W]hen a defendant voluntarily abandons property, he lacks standing to contest the reasonableness of the search of the abandoned property."); *Wiltz*, 595 S.W.3d at 934; *Edwards v. State*, 497 S.W.3d 147, 160 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

"Abandonment is primarily a question of intent." *Martinez*, 689 S.W.3d at 42 (citing *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997)). "Abandonment of property occurs when a defendant intends to abandon the property and his decision to abandon it is not due to law enforcement misconduct." *Edwards*, 497 S.W.3d at 160 (citing *McDuff*, 939 S.W.2d at 616; *Citizen v. State*, 39 S.W.3d 367, 372 (Tex. App. —Houston [1st Dist.] 2001, no pet.)). "When police take possession of property abandoned independent of police misconduct[,] there is no seizure under the Fourth Amendment." *Id.* (alteration in original) (quoting *McDuff*, 939 S.W.2d at 616).

"Intent to abandon may be inferred 'from words spoken, acts done, and other objective facts and relevant circumstances.'" *Martinez*, 689 S.W.3d at 42 (quoting *McDuff*, 939 S.W.2d at 616). Abandonment from the "strict property-right sense" is not the issue. *Id.* at 43 (quoting *McDuff*, 939 S.W.2d at 616). Rather, the issue is "whether the accused ha[s] voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.'" *Id.*

7

(alteration in original) (quoting *McDuff*, 939 S.W.2d at 616 (citing *Matthews v. State*, 431 S.W.3d 596, 609–10 (Tex. Crim. App. 2014) (holding that the appellant intended to abandon any expectation of privacy in the van he left behind when, while being detained, he took off running and left the keys in the vehicle's ignition))); *see Edwards*, 497 S.W.3d at 161 ("We conclude that appellant has not shown that he had a reasonable expectation of privacy in the cellular telephone that was abandoned and 'left' on top of the Dodge Stratus, and, therefore, appellant lacks standing to complain of the reasonableness of the search of the contents of the cellular telephone.").

Here, Williams does not argue, and there is no evidence, that any potential law enforcement misconduct led to his alleged abandonment of his cell phone. The trial court found that by fleeing, Williams abandoned any reasonable expectation of privacy in his cell phone, and we conclude that the trial court's finding was not an abuse of discretion. *See Granville*, 423 S.W.3d at 409; *Martinez*, 689 S.W.3d at 46; *Edwards*, 497 S.W.3d at 161. As a result, we overrule Williams's first point of error.

II.  **The Trial Court Did Not Abuse Its Discretion by Allowing Admission of Extraneous Offenses**

Before opening statements, the State asked for a hearing regarding the admissibility of extraneous-offense evidence that Diete-Spiff and Wilson were prostitutes who worked for Williams, that they paid money earned from prostitution to Williams in exchange for drugs, and that Wilson used the proceeds of Williams's robbery of Yazzie to purchase crack cocaine. In support of their argument for admission of that evidence, the State argued that it was same-

8

transaction contextual evidence that would explain why Williams, Wilson, Diete-Spiff, and Yazzie were all at the same location.

According to the State's theory, Williams was with Wilson in his Dodge Nitro when he told Wilson that Diete-Spiff owed him money and was supposed to pay him "for tricks before she [went] on the trick, not after." The State argued that such evidence explained the motive for robbing Yazzie and Diete-Spiff and that Wilson would testify that Williams returned to his car with cash from the robbery—the proceeds of the prostitution—which Williams and Wilson spent on crack cocaine. The State explained that Williams had crack cocaine in his possession when he was arrested and argued that testimony was needed to corroborate Wilson's testimony.

After hearing the State's explanation, Williams agreed that the State could introduce the evidence showing that Diete-Spiff and Wilson were prostitutes but objected to the evidence showing that Williams was their pimp because such evidence was irrelevant or, alternatively, the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. The trial court overruled Williams's objections and decided to admit the evidence.

On appeal, Williams argues that the trial court erred by overruling his objections to the evidence.

### A.     Standard of Review

"[W]e will review the trial court's admission of evidence for an abuse of discretion." *Gomez v. State*, 552 S.W.3d 422, 429 (Tex. App.—Fort Worth 2018, no pet.) (citing *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016)). "So long as the trial court's decision falls within the zone of reasonable disagreement, we will not disturb it." *Id.* We must uphold the trial

court's decision "[i]f the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made." *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

**B.      There Was No Abuse of Discretion in the Trial Court's Evidentiary Rulings**

**1.      Relevance**

"Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016); *see* TEX. R. EVID. 401, 402.  For evidence to be considered material, it must relate to a fact of consequence, which includes both "an elemental fact or an evidentiary fact from which an elemental fact can be inferred." *Henley*, 493 S.W.3d at 84.  For evidence to be probative, it must tend to make the existence of the fact of consequence "more probable or less probable than it would be without the evidence." *Id.* at 83.  The threshold for relevance under Rule 401 is low. *Wells v. State*, 611 S.W.3d 396, 409 (Tex. Crim. App. 2020) (citing *Ex parte Smith*, 309 S.W.3d 53, 56 (Tex. Crim. App. 2010)).

Here, as the State explained, evidence that Williams was a pimp who had not been paid by Diete-Spiff was both material to and probative of the essential element of motive for the robbery and shooting of Yazzie.  Evidence that Williams and his co-defendant, Wilson, took the proceeds of the robbery to purchase crack cocaine was also relevant to the issue of motive. Because Wilson's credibility was at issue at trial since she was a co-defendant and prostitute, the fact that Williams was found with crack cocaine during his arrest corroborated Wilson's

10

testimony and tended to prove that he was the perpetrator of the crime. As a result, the trial court did not abuse its discretion by concluding that the extraneous offenses met the low threshold for relevance.

### 2. Rule 404(b)

"Evidence of a crime, wrong, or act other than the offense charged is not admissible to prove that the defendant acted in conformity with his character but may be admissible for other purposes." *Inthalangsy v. State*, 634 S.W.3d 749, 756 (Tex. Crim. App. 2021) (citing TEX. R. EVID. 404(b)). "These purposes include proving intent[,] . . . motive[, and opportunity] as well as illustrating other aspects of an 'indivisible criminal transaction,' also known as same-transaction contextual evidence." *Id.* Rule 404(b) is a rule of inclusion. TEX. R. EVID. 404(b); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *James v. State*, 623 S.W.3d 533, 545 (Tex. App.—Fort Worth 2021, no pet.).

"Same transaction contextual evidence is admissible as an exception under Rule 404(b) where such evidence is *necessary* to the jury's understanding of the instant offense." *Moore v. State*, 165 S.W.3d 118, 122 (Tex. App.—Fort Worth 2005, no pet.) (citing *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). Such evidence is admissible "simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purpose." *Id.* (quoting *Mayes v. State*, 816 S.W.2d 79, 86 n.4 (Tex. Crim. App. 1991)). "Necessity, then, seems to be one of the reasons behind admitting evidence of the accused's acts, words and conduct at the time of the commission of the offense." *Id.* at 122–23 (quoting *Mayes*, 816 S.W.2d at 86 n.4). "Same-transaction contextual evidence 'illuminate[s]

11

the nature of the crime alleged.'" *Inthalangsy*, 634 S.W.3d at 756 (alteration in original) (quoting *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993)). "A jury is entitled to know all the facts that are 'blended or closely interwoven' with a continuous criminal episode." *Id.* (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)). Even so, the "same-transaction contextual evidence must be 'necessary to the jury's understanding of the offense' such that the charged offense would make little sense without the same-transaction evidence." *Id.* (quoting *Pondexter v. State*, 942 S.W.2d 577, 584 (Tex. Crim. App. 1996)).

Williams did not object to evidence showing that Diete-Spiff and Wilson were prostitutes. Evidence that he was their pimp explained the reason for Williams's and Wilson's presence at the scene and showed that Williams had the opportunity to commit the offense. The evidence that Diete-Spiff owed her pimp money further showed the reason why Williams decided to rob Diete-Spiff of the proceeds of her prostitution, proving intent and motive. According to Wilson, Williams counted the proceeds, and the two used the money to purchase crack cocaine, which provided further evidence of motive. Moreover, we find that it was within the zone of reasonable disagreement for the trial court to "find the offenses to be contextual" since they "comprised one continuous course of conduct." *Id.*

### 3. Rule 403

Next, "[e]vidence admissible under Rule 404(b) may nevertheless be excluded under Rule 403 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.'" *James*, 623 S.W.3d at 546 (quoting TEX. R. EVID. 403).

12

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *Id.* at 546–47 (citing *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g)). "It is the burden of the party opposing the admission of the evidence to overcome this presumption by showing that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or by the other dangers listed in Rule 403." *Id.* at 547 (citing *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd)).

"When considering if evidence is admissible despite a Rule 403 objection, the trial court must conduct a balancing test." *Id.* (citing *Montgomery*, 810 S.W.2d at 389). The test considers the following:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence and balance those factors against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Id.* (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.)).

Our analysis above explains that the extraneous offenses were probative of Williams's intent, motive, and opportunity and that the State's need for the evidence was high given that its main witnesses were prostitutes who were subject to attacks on their credibility. As a result, the first two *Gigliobianco* factors weigh in favor of admission.

13

While the extraneous offenses were undoubtedly prejudicial, "all evidence against a defendant is . . . designed to be prejudicial." *Id.* at 549 (quoting *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013)). Even so, Rule 403 is concerned not with prejudicial evidence but with evidence that is unfairly prejudicial, and because the extraneous offenses were less severe, we find that they did not unfairly prejudice Williams's murder trial. Moreover, to avoid any unfair prejudice, or confusion, or distraction from the main issues in the case, the trial court provided the following limiting instruction:

> You are instructed that if there is any testimony before you in this case regarding the defendant Michael Jerod Williams having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that Michael Jerod Williams committed such other offenses, if any were committed, and even then you may only consider the same in determining the state of mind of Michael Jerod Williams, in connection with the offense, if any, alleged against Michael Jerod Williams in the indictment in this case, or in determining proof of motive, opportunity, intent, preparation, identity, plan, or absence of mistake or accident, if any, in connection with the offense alleged in the indictment in this case and for no other purpose.

"We presume that the jury followed the trial court's limiting instruction[]" and, as a result, conclude that the extraneous offenses did not suggest a decision on an improper basis. *Id.* (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)). As a result, the third and fourth *Gigliobianco* factors weigh in favor of admission.

Next, the fifth factor deals with scientific evidence or expert testimony. *Id.* at 550. Because "[n]one of the extraneous-offense evidence was scientific or complex," this factor weighs in favor of admission. *Id.*

14

As for the last factor, Williams complains that the State had to call two witnesses to develop the extraneous-offense evidence. Because over twenty witnesses were called in this trial, and because it took a short amount of time to develop the extraneous offenses when compared to the record, we find that the last *Gigliobianco* factor weighs in favor of admission.

After balancing the *Gigliobianco* factors, we find that Williams failed to meet his burden to overcome the Rule 403 presumption that the extraneous-offense evidence was more probative than prejudicial. As a result, we overrule Williams's Rule 403 complaint.

Having found no abuse of discretion in the trial court's evidentiary rulings, we overrule Williams's last point of error.

## III.   Conclusion

We affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     July 8, 2025
Date Decided:       August 5, 2025

Do Not Publish